[Civ. No. 980.   Third Appellate District.—November 8, 1912.]

W. B. HARELSON, Respondent, v. SOUTH SAN JOAQUIN IRRIGATION DISTRICT, and B. A. GOODWIN, C. M. CARLSON, C. T. WIGGIN, F. H. KINCAID and W. J. WOODWARD, as Board of Directors of Said Irrigation District, Appellants.

IRRIGATION DISTRICT—CONSTRUCTION OF ACT—CLASSES OF LANDS ENTITLED TO EXCLUSION.—Section 78 of the Irrigation District Act provides that two distinct classes of lands shall be excluded therefrom: 1. Lands which are already irrigated and entitled to be irrigated "from another source"; and 2. Lands which are already irrigated and entitled to be irrigated "by another system of irrigation works."

ID.—MEANING OF TERMS "ANOTHER SOURCE."—The terms "another source" do not necessarily mean another system of irrigation works similar to that provided by the district claiming the land as part thereof. They mean, when considered in their natural signification, any source by which the lands are in fact being irrigated. The legislature had in mind the individual landowner who had succeeded in providing means for the complete irrigation of his land, although the same was limited to supplying water for his own individual needs.

ID.—IRRIGATION BY MEANS OF PUMPING-PLANT—RIGHT OF LANDOWNER TO EXCLUSION FROM DISTRICT.—Where it appears that a landowner prior and subsequently to the organization of the district, irrigated his lands exclusively from a pumping-plant and well, established on his own lands, and that he has never derived any benefit from the irrigation works of the district, the board of directors has no discretion to retain his lands within the district, and he is entitled to exclusion of the same therefrom.

ID.—PARTICIPATION OF LANDOWNER IN ELECTION ESTABLISHING DISTRICT—ABSENCE OF ESTOPPEL—TIME FOR EXCLUSION OF LANDS NOT FIXED.—The fact that the owner of the lands irrigated by the well and pump participated in the election establishing the district, does not estop him from thereafter filing a petition for the exclusion of his lands from the district, since the act contemplates no particular time within which such petition may be filed.

ID.—REMEDY FOR REFUSAL OF BOARD TO EXCLUDE LANDS—MANDAMUS.—Where the board of directors has refused to exclude the lands of a petitioner whose lands are irrigated and entitled to be irrigated by means of a pumping-plant and well thereon, *mandamus* will lie to compel the board of directors to exclude the same from the irrigation district.

ID.—RULES AS TO MANDAMUS—CONTROL OF DISCRETION—ABUSES—LEGAL
RIGHT.—As a general rule *mandamus* will not lie to control the dis-
cretion of a court or officer or to enforce its exercise in a partic-
ular manner; but nevertheless *mandamus* will lie to correct abuses
of discretion, and also to enforce a particular action by the inferior
tribunal or officer, where the law clearly establishes the petition-
er's right to such action.

APPEAL from a judgment of the Superior Court of San
Joaquin County issuing a writ of *mandamus.* Frank H.
Smith, Judge.

The facts are stated in the opinion of the court.

L. L. Dennett, for Appellants.

A. L. Levinsky, for Respondent.

CHIPMAN, P. J.—*Mandamus.* Plaintiff seeks to have his
land situated within the boundaries of defendant district ex-
cluded therefrom. To this end he filed his petition in due
form with the board of directors of defendant district which
was denied. Thereupon he complained to the superior court
and prayed for a writ of *mandamus* to compel the said board
to make the necessary order excluding his lands from said
district. A general demurrer to the complaint was overruled;
defendant answered; the cause was tried and plaintiff had
findings and judgment as prayed for. The appeal is from this
judgment on the judgment-roll.

At the hearing before the board of directors on said petition
there was "filed a protest against the granting of said peti-
tion"; witnesses were called and evidence taken and the board
of directors made findings and rendered its decision which are
made part of the findings of the court and are as follows:

"3. That W. B. Harelson now is and was during all the
times mentioned in his petition the owner of the lands here-
inbefore described, which said land is entirely surrounded by
lands included within the boundaries of the South San
Joaquin Irrigation District.

"4. That said South San Joaquin Irrigation District was
organized during the year 1909; that prior to the organization
of said South San Joaquin Irrigation District said W. B.

Harelson sunk a well to the depth of one hundred and thirty-seven feet upon said land and premises for the purpose of irrigating crops grown and to be grown thereon, and proceeded to construct ditches and otherwise prepare said lands for irrigation and installed a pumping-plant and gasoline engine thereon at a cost of about one thousand four hundred dollars, with which he has since irrigated and is now irrigating alfalfa growing upon about forty acres, a portion thereof being in each forty of said eighty-acre tract; that said ditches, etc., can be used to irrigate from the system of canals and ditches of the South San Joaquin Irrigation District, and will be necessary for such purpose.

"5. That said pumping-plant installed by the said W. B. Harelson is adequate for the irrigation of the lands and premises heretofore irrigated therefrom, and the same has been and now is being used for such purpose.

"6. That a general system of pumping would probably lower the water level in said district, and that the water level has been raised materially by the irrigation system now in operation which the South San Joaquin Irrigation District has agreed to purchase and take over.

"7. That irrigation by a pumping system is practicable, but more expensive than by a system taking water from streams through canals and ditches. That subsequent to the filing of said petition herein referred to, a bond issue has been regularly authorized and provided for by said district.

"8. The board further finds that said pumping-plant does not constitute a source or system as contemplated by sec. 78 of the Irrigation Act and that said lands are not already irrigated or entitled to be irrigated from another source or by another system of irrigation works, and deem it not for the best interests of said district that the lands mentioned in said petition should be excluded from the district, and that petitioner has failed to establish any facts showing that he is entitled to have such lands excluded."

The court made the following findings not appearing in the findings of the board of directors: Finding VII is that, under section 78 of the act approved March 31, 1897, [Stats. 1897, p. 279], and the acts amendatory thereof, on a showing of the facts therein mentioned, "the directors of such district have no discretion, or authority, or jurisdiction, to deny or refuse

to make and enter an order excluding such lands. That upon the finding that said lands are irrigated by a well and pumping-plant the petitioner herein became entitled to and it was the duty of said board of directors to make and enter its order excluding the lands of petitioner." That from the facts found by the board of directors it resulted "that said petitioner has a feasible and practicable system of irrigation established, and it was so established prior to the organization of said the South San Joaquin Irrigation District, and the aforesaid well and pumping-plant provided is sufficient for the irrigation of the lands, and that the irrigation of the lands of said petitioner by means of the aforesaid well, gasoline engine and pumping-plant constitutes, and is, a source other and different from the South San Joaquin Irrigation District." (Finding IX.) That it is immaterial that the said board refused to make its order excluding said lands, "upon the ground, or for the reason, that said board of directors did not deem it for the best interests of the district that the lands of petitioner, or any part thereof, described in the petition, should be excluded from said district, or not, because and by reason of the findings of said board of directors (which are hereinafter set forth) were required and compelled under and by reason of the law hereinbefore set forth, to exclude such lands, and each and all thereof." (Finding XI.) Finding XII is as follows: "That notwithstanding that it may be that the lands of the petitioner herein are within the watershed or drainage basin of the Stanislaus River, nevertheless the lands of said petitioner, as hereinbefore described, have not, and neither of them has, been materially, or at all, benefited by the said irrigation system known as the 'Tulloch System,' or Tulloch canals, and the water level has not been materially raised by the irrigation system known as the 'Tulloch System,' which has its ditches near the lands of said petitioner; and neither have the lands of said petitioner been benefited, neither will they continue to be benefited by the said irrigation system of said respondents, and if the lands of said petitioner are excluded from the said South San Joaquin Irrigation District, the petitioner will not obtain the benefit of any money or labor expended by either the respondents, or the assessment payers of said South San Joaquin Irrigation District, and neither will the said petitioner be-

come a beneficiary of said irrigation system, and neither will his lands be benefited thereby.

"XIII.   That the underground flow, tapped by the well of the petitioner herein has its ultimate source and head in the Sierra Mountains to the east of said lands, and said source is, and has been, amply sufficient for the irrigation of the lands of said petitioner.

"XIV.   That it is immaterial whether the lands of said petitioner obtained their supply of water from the same watershed and drainage basin as that from which the waters of the Stanislaus River flow, and from which the Tulloch system obtained its water, for the reason that the said Tulloch system and the South San Joaquin Irrigation District are not injured by reason of the irrigation of the lands of said petitioner by the pump and well of said petitioner."

The position taken by the trial court and by respondent here is that, under the facts as found, the board of directors had no discretion or power to do otherwise than order the land excluded and, failing in its duty, plaintiff is entitled to the writ of *mandamus* to compel its performance.   And this is claimed to result from the provisions of section 78 of the act of March 31, 1897 (Stats. 1897, p. 254), as amended in 1905 (Stats. 1905, p. 27).   The act of 1905 re-enacts section 78 of the original act except as to the last paragraph which is omitted.   This paragraph provided that "no lands included within the limits of any city or town . . . shall be excluded under the provisions of this act."

The sections relating to the exclusion of lands, after the district has been organized, are 74 to 78, inclusive.   Under the provisions of section 2 of the act, upon hearing the petition for the organization of the district, the board of supervisors is given authority "to make such changes in the proposed boundaries as may be deemed advisable, and shall define and establish such boundaries.   But said board shall not modify said boundaries so as to exclude from such proposed district any territory which is susceptible of irrigation from a common source and by the same system of works applicable to the other lands in such proposed district; nor shall any lands which will not in the judgment of said board, be benefited by irrigation, by means of said system of works, be included

within such proposed district. Any person whose lands are susceptible of irrigation from the same source and system of works, may, upon his application, in the discretion of said board, have such lands included within said proposed district.'' A right of appeal to the superior court is given by section 4, ''to any person interested who is a party to the record.'' While section 2 seems to have given the board of supervisors authority to make such changes in the boundaries of the proposed district as it deemed advisable, it was prohibited from excluding any territory therefrom ''which is susceptible of irrigation from a common source and by the same system of works applicable to the other lands in such proposed district.'' The act seems to have contemplated that the board of supervisors might define the boundaries in a way harmful or unjust to one or more landowners embraced therein and hence the provisions of sections 74 et seq. Section 74 provides that ''the boundaries of any irrigation district now organized or hereafter organized under the provisions of this act, may be changed, and tracts of land which were included within the boundaries of such district at or after its organization . . . may be excluded therefrom, in the manner herein provided''; but neither such change of boundaries of nor such exclusion from the district ''shall impair or affect its organization, or its rights to property, or any of its rights or privileges of whatever kind or nature.'' Section 75 prescribes the steps to be taken by petition for a hearing before the board of directors for the exclusion of any land and requires the petition to state the grounds and reasons upon which it is claimed that the land should be excluded. Section 76 directs what notices of such hearing are to be given, the time and place of hearing, etc. Section 77 directs the board to proceed to hear the petition and the evidence in its support. Section 78 relates to the decision of the board and is as follows:

''If, upon the hearing of any such petition, no evidence or proofs in support thereof be introduced, or if the evidence fail to sustain said petition, or if the board deem it not for the best interests of the district that the lands, or some portion thereof, mentioned in the petition, should be excluded from the district, the board shall order that said petition be denied

as to such lands; but if the said board deem it for the best interest of the district that the lands mentioned in the petition, or some portion thereof, be excluded from the district, . . . then it 'shall be the duty of the board to, and it shall forthwith, make an order that the lands mentioned and described in the petition, or some defined portion thereof, be excluded from said district; provided, that it shall be the duty of said board to so order, upon petition therefor as aforesaid, that all lands so petitioned to be excluded from said district shall be excluded therefrom which cannot be irrigated from, or which are not susceptible to, or would not, by reason of being permanently devoted to uses other than agricultural, horticultural, viticultural, or grazing, be directly benefited by the actual irrigation of the same from a common source, or by the same system of works with the other lands of said district, or from the source selected, chosen or provided, or the system adopted for the irrigation of the lands of said district, or which are already irrigated, or entitled to be irrigated, from another source or by another system of irrigation works.''

Whether or not *mandamus* can be resorted to in the present action depends upon the construction to be given section 78. It is therein provided that ''if the evidence fail to sustain said petition, *or if the board deem it not for the best interests* of the district that the lands . . . should be excluded from the district, the board shall order that said petition be denied as to such lands''; likewise, if the board deem it for the best interest of the district that the lands or some portion thereof be excluded, ''it shall be the duty of the board to . . . make an order that the lands . . . be excluded from said district.'' Then follows the proviso which declares that ''it shall be the duty of said board to so order . . . that all lands . . . shall be excluded therefrom which cannot be irrigated . . . from a common source, or by the same system of works with the lands of said district . . . or which are already irrigated, or entitled to be irrigated, from another source or by another system of works.''

Appellants contend—''that inasmuch as the Irrigation Act contemplates a comprehensive system of irrigation upon a large scale, the 'separate source or system' referred to in the sections relied upon by respondent, likewise refers to a com-

prehensive system involving an acreage of sufficient magnitude to come within the classification of irrigation by a system." The terms used in the act are not quite accurately quoted by appellants. The lands referred to are lands "which are already irrigated, or entitled to be irrigated, *from another source or by another system of irrigation.*" The statute contemplates that lands may have been included within the boundaries of the district, as defined by the board of supervisors, "which are already irrigated, or entitled to be irrigated, from another source," that is, a source other than by the proposed works, or may be irrigated or entitled to be irrigated "by another system of irrigation works." The terms "another source" do not necessarily mean another system of irrigation works similar to that provided by the district claiming the lands as part thereof. They mean, when considered in their natural signification, any source by which the lands are in fact being irrigated. The statute seems to deal with two classes of lands which it is made the duty of the board of directors to exclude; 1. Lands which are already irrigated or entitled to be irrigated "from another source"; and 2. Lands which are irrigated or entitled to be irrigated "by another system of irrigation works." The legislature had in mind the protection of the individual landowner who had succeeded in providing means for the complete irrigation of his lands, although the source was limited to supplying water for his own individual needs. Nor should the means adopted be limited to some enlarged and general scheme for the irrigation of large tracts. The means may be by bringing water by gravity to the land, through a ditch taken directly from some watercourse; or it may be by pumping it from a bordering or near by creek or river, or from wells on the land. If the means are such as show that by them the land is already irrigated or entitled to be irrigated from any source, other than by the proposed district system, the landowner is entitled to have his land excluded and the statute makes it the duty of the board of directors to so order.

It is claimed by appellants that, as respondent must have participated in the election establishing the district and had his day in court when the board of supervisors authorized the organization of the district, he is now estopped from objecting

to the boundaries thus established. We cannot give the act such a construction. The act contemplates, as we have shown, that land may be included which ought not to be included and hence the act gives the landowner the right to have the question heard by the board of directors and no time is prescribed within which a petition to have land excluded may be filed. If a bonded indebtedness had been created and the bonds had been sold and had. become a lien on the land before plaintiff petitioned to have it excluded, a question of estoppel might arise. But no such situation existed. It was alleged in the answer that a bonded indebtedness had been voted and the board of directors had passed a resolution authorizing the issuance of bonds, at the time the petition of plaintiff was filed with the board. But such action alone was not sufficient to create a lien on the land and none would thereby be created until the bonds had been sold and there is no averment that bonds had become a lien on the land. The court found that no evidence was introduced in support of this issue. Finding of the board of directors was that the bond issue was authorized after the petition was filed.

It remains to determine whether plaintiff is entitled to the remedy of *mandamus*. ·

The Irrigation District Act makes no provision for an appeal from the decision of the board of directors and there is, therefore, no speedy or adequate remedy by appeal. The findings are specific and clear that half of plaintiff's land was irrigated and that he had an adequate supply of water and means for irrigating the other half from a source within his own control. The court found—"That the water supply obtained by petitioner from said well, pump and through said ditches has proven sufficient for years, and prior to any action taken for the organization of the aforesaid irrigation district, was sufficient to irrigate said eighty acres of land and is now sufficient for the irrigation of the same." Such being the facts it became the duty of the board of directors by the very terms of the act to order the land excluded. It is true that in the earlier part of section 78 of the act it is provided that "if the board deem it not for the best interests of the district that the lands . . . should be excluded from the district, the board shall order that said petition be denied as to such lands."

But this power is not an arbitrary one to be exercised regardless of the positive provisions we have noticed, conferring indisputable rights upon the landowner. If the above quoted provision gives the power contended for it would make the provisions for the protection of the landowner absolutely meaningless and of no purpose whatever. Indeed, it is only by giving the terms "from another source or by another system of irrigation works," the broad and comprehensive interpretation they contend for, that appellants rely upon their claim that the act lodges with the board of directors the discretion to say that it may "deem it not for the best interests of the district that the lands be excluded," even though the owner's land is irrigated and is amply supplied with water for that purpose by a source within his own control. Nor can the position of appellants be otherwise maintained without utter disregard of what seem to be the plain requirements of the law.

Section 1085 of the Code of Civil Procedure provides that the "writ may be issued by any court . . . to any inferior . . . board . . . to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . ."; and section 1086 provides that "the writ must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law."

In the present case we know of no remedy whatever except by *mandamus.* The rule was stated in *Puterbaugh* v. *Windham et al.,* 162 Cal. 611, [123 Pac. 804], as follows: "It is undoubtedly true that the writ of *mandamus* is not a writ of error and that, generally speaking, it is not available for the purpose of altering or varying in any particular the finding of a judicial or *quasi* judicial body or officer acting within its or his appropriate jurisdiction; but where the facts are undisputed and the only matter to be determined is the duty of the body or officer under the law, the court will define such duty and enforce not only its performance but the carrying out of the obligations of the respondent body or officer in a particular manner." It is true that the case there involved the payment of a salary as fixed by law, but we do not see that the principle is to be limited in its application to such a case. In the present case the facts are undisputed, that is,

the facts out of which arose the duty as defined and declared by the statute. There, then, can be no sound objection urged to enforcing the performance of this duty by directing that the obligation of the respondents be carried out in a particular manner, to wit, by making an order excluding the land in question.

*Inglin* v. *Hoppin,* 156 Cal. 483, [105 Pac. 582], is an instructive case and somewhat cognate to the case here. There the writ was invoked to compel the board of supervisors to set aside an order made by it in the matter of the petition to have certain lands situated in a certain reclamation district, set off and erected into an independent district, by which order the petition was denied. After citing numerous cases, the court said: "While, of course, it is the general rule that *mandamus* will not lie to control the discretion of a court or officer, meaning by that that it will not lie to force the exercise of discretion in a particular manner, the above cases abundantly show that *mandamus* will lie to correct abuses of discretion, and will lie to force a particular action by the inferior tribunal or officer, where the law clearly establishes the petitioner's right to such action."

The findings of fact by the board of directors show very clearly that the evidence from which the findings were deduced established petitioner's right to have his land excluded. It was found "that said pumping-plant does not constitute a source or system as contemplated by sec. 78 of the Irrigation Act and that said lands are not already irrigated or entitled to be irrigated from another source or by another system of irrigation works." This finding is but a conclusion of law based on what we regard as an erroneous construction of the statute. The statement which immediately follows, to wit, "and we deem it not for the best interests of said district that the lands mentioned in said petition should be excluded, and that petitioner has failed to establish any facts showing that he is entitled to have such lands excluded," is but a deduction from this same erroneous construction of the statute. This is apparent from the fact that the board of directors found that petitioner's land was being irrigated by means of a pumping-plant, which fact established entitled him to

have the land excluded and this fact could not be nullified by an erroneous meaning given to the statute.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 6, 1913.