[Civ. No. 1403.   Third Appellate District.—October 5, 1915.]

LEWIS MOREING et al., Copartners, Petitioners, v. ROBERT E. SHIELDS et al., as Trustees of Reclamation District No. 1001, Respondents.

RECLAMATION DISTRICT—PAYMENT OF WARRANTS FOR WORK—"ISSUED BONDS"—CONSTRUCTION OF CODE—ASSESSMENT—MANDAMUS.—Under the provisions of sections 3456, 3463, and 3466 of the Political Code, it is the duty of the trustees of a reclamation district to call in sufficient of an assessment levied to pay warrants issued for the construction of levees and other reclamation work of the district done pursuant to contracts with the trustees, and *mandamus* will lie to require them so to do, where the only steps taken toward the "issuance" of bonds to pay for the cost of such work, as provided by said sections, have been their execution and delivery to the county treasurer, as it is essential that such bonds be sold and placed in the hands of third parties before there is an "issuance" thereof which will warrant the payment of the cost of the reclamation work out of the proceeds derived from their sales.

ID.—COLLECTION OF ASSESSMENT AT PARTICULAR TIME—POWER OF TRUSTEES TO CONTRACT FOR.—The board of trustees of a reclamation district have authority to contract to make the collection of the assessment at a particular time, and *mandamus* will lie to compel them to make the collection, as the provisions of section 3466 of the Political Code, which give them a discretion as to the *time* of calling in the assessment is not violated thereby, by reason of the fact that they are acting in a representative capacity for the district, and the interests of all the landowners are involved in the collection of the assessments.

ID.—MANDAMUS—CONTRACT WITH PUBLIC OFFICERS—ENFORCEMENT.— If a contractual right is so inseparably bound with an imperative duty laid upon public officials by law as to require the performance of the duty of the officers to further secure such right, *mandamus* may be invoked to coerce such official action.

28 Cal. App.—33

ID.—ANSWER TO PETITION—KNOWLEDGE OF BOND PROCEEDINGS—IM-MATERIAL ISSUE.—In such a proceeding, no material issue is presented by the allegation in the answer to the petition that all parties expected and believed that a bond election would be held, the bonds voted, and that they would produce the money to satisfy the claim of petitioners, in the absence of any agreement that the contractors would look to such fund for their compensation.

ID.—ABSENCE OF DEMAND FOR CALLING IN OF ASSESSMENT—IMMATERIAL ALLEGATION.—An allegation in such answer that no demand was made by petitioners upon respondent trustees to call in any portion of the assessment, is likewise immaterial, where it is alleged in such answer that said trustees were forbidden by law to call in said assessment or any portion thereof, except for the purpose of meeting the principal and interest of said bonds.

ID.—MANDAMUS—DEMAND—WHEN UNNECESSARY.—While ordinarily a demand should be made upon the inferior tribunal for the performance of the duty before a writ of mandate will issue, it is unimportant when it appears that it would have been refused if made.

APPLICATION originally made to the District Court of Appeal for the Third Appellate District for a Writ of Mandate to require the trustees of a reclamation district to call in sufficient of an assessment to pay certain warrants.

The facts are stated in the opinion of the court.

Downey & Pullen, and A. M. Seymour, for Petitioners.

A. C. McLaughlin, for Respondents.

BURNETT, J.—The application is for *mandamus* to require the trustees of said reclamation district to call in sufficient of an assessment now levied to pay warrants owned by petitioners, aggregating $175,226.98. Said reclamation district was organized in 1911 by act of the legislature. (Stats. 1911, p. 831.) On April 30 and May 21, 1914, respectively, contracts were entered into between the district, through its trustees, and petitioners for the construction of levees and other reclamation work in the district. Warrants were to be issued from time to time as the work progressed, but it was expressly stipulated in the contract that "the warrants of said Reclamation District No. 1001, issued to the contractors in payment for the work done by them under this agreement as aforesaid, shall be regularly reg-

istered by the county treasurer of Sutter County, California, but said warrants shall not, nor shall any of them, be payable except at the option of the party of the first part, prior to the first day of May, 1915, on or before which date the party of the first part hereby agrees to pay said warrants in cash.'' Petitioners completed their work before November 30, 1914, to the entire satisfaction of the district and in full compliance with their contracts. Warrants were issued from time to time and were approved by the board of supervisors and registered by the county treasurer. The balance of these remaining unpaid is as before stated. On September 26, 1914, the trustees filed with the board of supervisors of Sutter County, in accordance with section 3455 of the Political Code, a report and statement of reclamation work already done, including that done by petitioners, and reporting that it would be necessary to levy an assessment of five hundred thousand dollars to pay for said work and praying for the appointment of commmissioners to levy said assessment. Accordingly, on October 5, 1914, commissioners were appointed by said board of supervisors. Three months later, on January 6, 1915, and before said commissioners had made their report, the said trustees ordered a special bond election under section 3480 of the Political Code to determine whether bonds of the district should be issued in the sum of five hundred thousand dollars. On January 30, 1915, the election was held and resulted in favor of the bonds. Twelve days later, on February 11, 1915, the commissioners of assessment made their report showing the levy of an assessment in the sum of five hundred thousand dollars. It is not disputed that the legal steps required to make the assessment valid and binding were taken. During the thirty days that the assessment-list remained in the office of the county treasurer, eleven thousand dollars was voluntarily paid in by certain landowners, under section 3465 of the Political Code, but this has been disbursed on other warrants of the district. Since said election steps have been taken to issue the bonds, they have been executed and delivered, together with the assessment lists, to the county treasurer of Sutter County. Said bonds are dated April 1, 1915, but none of them has been sold.

It is the contention of petitioners that by virtue of the following quoted provisions of the Political Code it was and

is the legal duty of the trustees to proceed to the collection of said assessments. Section 3456 directs that "the same must be collected and paid into the county treasury as hereinafter provided, and be placed by the treasurer to the credit of the district, and paid out for the works of reclamation upon the warrants of the trustees, approved by the board of supervisors, or, if bonds of such district have been issued upon said assessment, then said treasurer shall set the same apart as a separate fund for the purpose of paying the principal and interest of such bonds and shall not pay any part of the moneys received from such assessment for any purpose other than the payment of the principal and interest of such bonds." Section 3463 provides that after the filing of the assessment list with the treasurer, the charges assessed constitute a lien and "no subsequent act or conduct of the trustees shall invalidate said assessment or lien, but such trustees may be compelled by mandate, or other proper proceeding, to perform their duties as required by law." Section 3466 provides that all unpaid assessments "shall be collected and paid in separate installments, of such amounts and at such times, respectively, as the board, from time to time, in its discretion, may, by order entered in its minutes, direct . . .; provided that the trustees must, on the first day of January of each year, except when bonds shall have been issued on the assessment, order the collection of a sufficient amount of said assessment to pay all warrants that have been issued and outstanding for a period of two years or more, together with the interest on such warrants."

From the foregoing it is plain that a vital question involved herein is whether bonds have been *issued.* If the bonds have been *issued* the assessments must be collected and applied to such obligations. This is the only means provided by the statute for the payment of the bonds. The method is simple. The bonds are retired by the payment of the money collected from the assessments, and the expenses of the reclamation are discharged by the proceeds from the sale of the bonds. If the bonds *have not been issued,* however, the costs of the work must be met directly by the payment of the assessments and it is the duty of the trustees to call in the assessments for said purpose.

It is the contention of respondents that bonds have been *issued* herein for the reason that they have been executed and

placed in the hands of the treasurer. We are satisfied that this is a mistaken view of the significance of the term. It cannot be said that the bonds have been *issued* until they have been sold and placed in the hands of third parties, so as to create an obligation against the district.

The term *issue* as applied to bonds has been construed in many decisions which are collated by petitioners from which we make a few quotations. In *Sechrist* v. *Rialto Irrigation District*, 129 Cal. 640, [62 Pac. 261], the question was whether certain irrigation district bonds were barred by the statute of limitations and the court, through Commissioner Chipman, declared: "But it cannot be maintained that the bonds were issued in the sense of the statute until they were delivered for a valuable consideration. It was said in *Brownell* v. *Greenwich*, 114 N. Y. 518, [4 L. R. A. 685, 22 N. E. 24], speaking of certain bonds in litigation: 'They bear the date of March 25, 1871, and are presumed to have been executed at that time, but executing is not issuing, for they may be fully executed but never issued. . . . The bonds had no legal inception, and could not become valid obligations, aside from any other question, until actually delivered for a valuable consideration. Under the circumstances, we think that the delivery of the bonds to the plaintiff determines the date when his bonds were issued.' "

In *Corning* v. *Board of Commissioners*, 102 Fed. 57, [42 C. C. A. 154], we find the following: "It (referring to the word issued) is a common, plain word, whose usual significance is well known to persons of ordinary intelligence. In the absence of other definition in the statutes of Kansas, the presumption is strong that the legislature used it, and intended to use it, in its accustomed sense. It was used in laws relative to the sending forth of municipal bonds; loans upon which the officers of the state, of the counties, of townships, and of school districts and the purchasers of the bonds of these *quasi* municipal bodies must rely and which they must interpret. These officers and purchasers have interpreted and acted upon these laws without notice from the legislature that they intended that this word should have any strange, broad and unusual meaning in these statutes. In this state of the case no definition will be found so safe, so just, or so equitable as the ordinary meaning of the word—

the meaning which the word at once conveys to the ordinary apprehension—and that is to 'emit,' to 'send forth.' ''

In *City of Austin* v. *Valle* (Tex. Civ.), 71 S. W. 414, it is said: ''As used in a city charter providing that when bonds were 'issued' a fund be provided to pay the interest and for a sinking fund the word 'issued' referred to the time of the sale of the bonds, or when they passed into the hands of some one who claimed them as a debt against the city.''

A large number of other cases is cited to the same effect, but, indeed, it is plain enough from the context that the word ''issued'' signifies the delivery into the hands of a purchaser. The unreasonableness of respondents' position in this respect is aptly shown by petitioners in the quotation of the various provisions of the statute, substituting for ''issued'' the word ''executed'' as denoting ''prepared, dated and signed.'' It is thus made clear, we think, that the whole statute contemplates that when the bonds have been ''issued'' an obligation has been incurred and the necessity has arisen for the creation of a fund to meet that obligation. This situation manifestly does not appear until the bonds have been sold.

We conclude that a case is, therefore, presented wherein the assessments must be called in to pay the outstanding warrants of the district.

But at this point there is a sharp difference of opinion between the parties. The statute provides, as we have seen, that the assessment must be paid in installments in such amounts and at such times as the board *in their discretion* may determine. And such discretion seems to be limited only by the consideration that a debt has existed for two years. Admittedly, also, the writ of mandate cannot be invoked to control or interfere with the exercise of legal discretion committed to an inferior tribunal.

As to this, the position of petitioners is: ''The statute imposes no discretion as to whether a call shall be made or not. At most, it confers discretion as to *when* it shall be made. This discretion is vested solely in the trustees and is to be exercised by them alone. They may exercise it when they please, and they did exercise it, inferentially at least, when they represented to petitioners that sufficient money would be on hand to liquidate the warrants May 1, 1915,'' and ''by their representations to petitioners and dealings with them and their disregard of the objects and purposes of the stat-

utes they have abused the discretion reposed in them by law and *mandamus* will issue to correct it.''

The basis of the contention of petitioners lies in the fact that the trustees promised to pay in cash on or before May 1, 1915, and that the work was done in reliance upon this promise. It is the claim of respondents that ''the only construction that can be put upon the agreement to pay said warrants in cash on the first day of May, 1915, is that a credit was given to the reclamation district extending from the date of the warrant so issued to petitioners to the first day of May, 1915, on which date the said warrants were payable. That is that the warrants so issued by the district were not payable until the first day of May, 1915, except at the option of the district and that on that date they stood in the same class as the ordinary warrant of the district and were payable as such ordinary warrants are payable. To put any other construction upon the contracts would render them void in this regard as in excess of the authority of the board of trustees of the district.'' It is claimed that there is involved the principle enunciated in Dillon on Municipal Corporations (5th ed., sec. 777) as follows: ''It is a general and fundamental principle of law that all persons contracting with a municipal corporation must at their peril inquire into the statutory powers of the corporation or of its officers to make the contracts; and a contract beyond the scope of the corporate power granted or conferred by the legislature expressly or by fair implication, is void although it be under the seal of the corporation. This principle is more strictly applied, and properly so, than in the law of private corporations. So, also, those dealing with the agent of a municipal corporation are likewise bound to ascertain the nature and extent of his authority. This is certainly so in all cases where the authority is special and of record or conferred by statute. The fact that in such a case the agent made false representations in relation to his authority and what he had already done, will not aid those who trusted to such representations to establish a liability on the part of the corporate principal.''

The question thus presented is not without difficulty. If no other interest was involved than that of the trustees and petitioners, plainly the equitable principle of estoppel would preclude the trustees from urging such claim. But they are,

of course, acting in a representative capacity for the district —a *quasi* municipal corporation—and the interests of all the landowners therein are involved in the collection of the assessments. These latter have a right to demand that the law be strictly complied with in the enforcement of the claims of the contractors.

The contract itself is without any uncertainty. The express agreement is to pay in cash on or before the first day of May, 1915. If the trustees failed or neglected until the expiration of that date to pay said claim in cash, provided, of course, the terms of the contract and the provisions of the law had been observed by the contractors, then the trustees would be clearly in default. But, manifestly, payment could not be made in cash unless it were available and on hand. And the method provided for securing said money is, as seen, the calling in of the appropriate amount of said assessment. The contract undoubtedly implied, then, that the trustees would do whatever was necessary to secure said money—in other words, that they would exercise their discretion in said matter on or before said date.

The only debatable question, therefore, would seem to be whether said trustees had authority to bind themselves to collect the money at a particular time. It is not disputed that the first day of May was within the period during which the trustees were expressly authorized to call in the assessments if bonds were not "issued"; and we can perceive no valid reason why, for the advantage of the district, they might not agree to exercise their discretion on or before a particular date within said period. If the question were whether they should call in the assessment at all an entirely different situation would be presented, as, in such case, they could not forestall the exercise of their discretion. But where the law, as it does here, requires of them to call in the assessment but leaves to their discretion only the determination of the particular date within a certain period we think no excess of authority or violation of any legal principle is shown by an agreement making more certain the time for said collection.

There was, of course, also, a sufficient consideration for the agreement thus to exercise their discretion. No doubt this circumstance would weigh significantly with the contractors in their determination of the price of the work. The con-

tract here was for over two hundred thousand dollars' worth of work and the overhead charges for this gigantic undertaking could and would be more readily borne if a definite time were fixed for the payment of the warrants, and it is reasonable to assume that a lower price could thus be obtained.

As the case is thus far presented we think the writ of mandate is the proper remedy. The rule is properly stated, we think, in *Board of Trustees* v. *State,* 175 Ind. 147, [93 N. E. 852], as follows: "The use of *mandamus* is limited to the enforcement of rights and duties imposed by law and if the right or duty rests wholly upon contract the writ will not issue. . . . But a contract may create a relation upon which the law will impose rights and duties enforceable by *mandamus.* . . . Rights under a contract made with public officers under statutory authority may be enforced by *mandamus* in the absence of an adequate legal remedy. The decisions in this and other states are almost wholly without exception that, if a contractural right is so inseparably bound with an imperative duty laid upon public officials by law as to require the performance of the duty of the officers to further secure such right, *mandamus* may be invoked to coerce such official action." The following cases may also be consulted: *Worthington* v. *Breed,* 142 Cal. 102, [75 Pac. 675] ; *State* v. *Board of Drainage Commrs.,* 46 Wash. 474, [90 Pac. 660] ; *State* v. *Bates,* 235 Mo. 262, [138 S. W. 482]; *Smalley* v. *Yates,* 36 Kan. 519, [13 Pac. 845] ; *Borough of Rutherford* v. *Hudson River Traction* Co., 73 N. J. L. 227, [63 Atl. 84] ; *Harelson* v. *South San Joaquin Irr. Dist.,* 20 Cal. App. 324, [128 Pac. 1010.]

We think, therefore, that the demurrer to the petition here should be overruled and it is so ordered.

Respondents also filed an answer to said petition in which it is set out that at the time of the execution of said contracts "petitioners well knew and understood that a special election would be held in said reclamation district, at which election would be submitted to the landowners of the district the question of whether or not bonds of the district should be issued in an amount to be specified in the order for the election and in an amount at least sufficient to pay the estimated cost of completing the reclamation works of the district including the warrants to be issued to petitioners under said contracts and in the event that bonds carried at said election

such bonds should be issued and sold and the warrant issued to petitioners under said contracts were to be paid out of the proceeds of such sales; that at the time said contracts were entered into it was the judgment of the board of trustees of said reclamation district that bonds of the district would be voted, issued and sold on or before the first day of May, 1915, and for that reason said last mentioned date was fixed as the date of payment of the warrants so issued, as aforesaid, to petitioners.''

It seems clear that no material issue is presented by the foregoing allegation. It may be true that all the parties expected and believed that a bond election would be held and would result as the event disclosed and would produce the money to satisfy the claim of petitioners but, since there was no agreement that the contractors would look to such fund for their compensation, the trustees are not relieved of their duty to adopt the other method to enable them to comply with the terms of their contract.

The following averment is also found in the answer: ''Answering paragraph 15 of said petition said respondent trustees deny that they refused any demand made by petitioners; deny that any demand was made by petitioners to call in any portion of said assessment.''

Ordinarily, of course, a demand should be made upon the inferior tribunal for the performance of the duty before a writ of mandate will issue, but the circumstance is immaterial here for the reason that respondents here alleged ''that said trustees are forbidden by law to call in said assessment of $500,000 or any portion thereof, except for the purpose of meeting the principal and interest of said bonds.'' So believing, of course, they would refuse to comply with a demand to call in the assessment for any other purpose. When it appears that a demand would, at any rate, have been refused it is unimportant whether it was made. (*Moore* v. *Superior Court,* 20 Cal. App. 299, [128 Pac. 946].)

If there were any probability that said bonds could be sold within a reasonable time such opportunity should be afforded in the interest of the property owners. But there is no claim by respondents that any such prospect exists and we think the contractors should not be required to await indefinitely a change in the market. If respondents had alleged in their answer any facts showing a probability of an early sale we

would be disposed to postpone any definite action as to the writ. Nothing of the kind, however, appears, the nearest approach to it being found in the denial "that it is impossible to sell reclamation bonds at this time." This is an allusion to reclamation bonds generally, and not particularly to the bonds in question.

We think the writ should issue, and it is so ordered.

Chipman, P. J., and Hart, J., concurred.