[Civ. No. 5571. Second Appellate District, Division One.—April 12, 1929.]

FREDERICK NOBLE et al., Appellants, v. CALIFORNIA PRUNE AND APRICOT GROWERS ASSOCIATION (a Corporation) et al., Respondents.

Chas. F. Blackstock for Appellants.

Sapiro & Hayes for Respondents.

McLUCAS, J., *pro tem.*—Plaintiffs appeal from a judgment sustaining defendants' and respondents' demurrer to an amended petition for a peremptory writ of *mandamus*, without leave to amend.

The amended petition in substance alleges as follows: That petitioners are residents of the county of Ventura, state of California, and owners of apricot orchards and growers of apricots in said county and state; that defendant California Prune and Apricot Growers Association is a nonprofit co-operative association without capital stock, organized under the laws of the state of California, and has its principal place of business at San Jose, California; that the articles of incorporation of said defendant provide, among other things, that the number of directors of said defendant corporation shall be fifteen; that a copy of said articles of incorporation is attached to the petition and made a part thereof; that prior to June 29, 1925, each of the plaintiffs became members of said California Prune and Apricot Growers Association by executing with said associa-

tion a certain membership agreement; that in said membership agreement it is provided substantially as follows: "The undersigned hereby appoint the Voting Board heretofore selected by the members of California Prune and Apricot Growers Association as his attorney to vote in his name, place and stead, for him and representing his interests and the joint interests of all other growers at all annual, regular or special meetings of the members of the association, or otherwise, where a member may be called on to vote in or for the association with the same powers and rights as the undersigned himself would have if personally present from the date of the execution of this proxy to and including July 31, 1928. The Voting Board shall consist of thirty-nine members as provided in the original membership agreement of the California Prune and Apricot Growers Association and article four of the by-laws thereof, representing the various districts as therein set forth. Said board shall annually select the directors of the association. No person may serve as director and as a member of the Voting Board at the same time. The Voting Board shall determine all questions by majority vote. On written demand or vote of sixteen members of the Voting Board any particular problem or problems of the association shall be referred to the full membership of the association. In such event the proxy and power of attorney shall be temporarily suspended; and the entire membership shall be requested to vote thereon. The Voting Board shall thereupon vote as a unit as a majority of the association members so voting shall determine." That a copy of said membership agreement is attached to the petition and made a part thereof. That article eight of the articles of incorporation of said association is as follows: "The association may provide in its by-laws the terms and conditions upon which membership may be transferred or assigned and conditions upon which, and at the time when membership may cease, and the mode, manner and effect of the expulsion of a member, and the method, time and manner of withdrawal, and the right of members to vote by proxy or by mail and any other things in furtherance of, but not in conflict with, these articles." That article four of the by-laws of said association is as follows: "(a) The Voting Board, consisting of thirty-nine members, elected by the members of the voting

districts, shall be the proxy and attorney of each member of the association, to vote in his name, place and stead, and represent his interests and the joint interest of all other members of the association at all annual, regular or special meetings of the members of the association, or otherwise, where a member of the association may be called upon to act in or for the association, with the same powers and right as the member himself would have if personally present, which said proxy and power of attorney shall remain and continue in force for a full period of seven years from July 31, 1921. The personnel of the Voting Board may change from time to time without affecting or impairing such proxy and power of attorney vested in the Voting Board. The thirty-nine members of the Voting Board shall represent the various districts of the state as follows: (Enumerating districts.) (b) The members of the Voting Board shall be selected by the members in their respective districts. The Voting Board shall have such powers and duties as set forth in the membership agreement and these by-laws. . . . (d) The Voting Board shall determine all questions by majority vote. Twenty members shall constitute a quorum of the Voting Board, but no action except as provided in subdivision (f) of article four of these by-laws, or a vote to adjourn shall be taken by the Voting Board, except by the affirmative vote of at least twenty members. . . . (f) On written demand or vote of sixteen of the Voting Board any particular problem or problems of the association shall be referred to the full membership of the association. In such event, the proxy and power of attorney shall be temporarily suspended; and the entire membership shall be requested to vote thereon. The Voting Board shall thereupon vote as a unit as a majority of the association members so voting shall determine. : . .'' That a copy of the by-laws is attached to the petition and made a part thereof. That at a meeting of said voting board, held in San Jose, California, on the twenty-ninth day of June, 1925, a quorum being present and voting, the following resolution was adopted, more than twenty of the said voting board voting in favor thereof: ''Resolved, that we submit to the members for their vote the question as to whether or not they want a withdrawal clause providing for withdrawal in March, 1926, and that the report of the reorganiza-

tion committee be printed in the ''Sunsweet Standard' with proper comments.'' The petition further alleges:

''That said resolution was intended to mean and in fact did mean that it was resolved by the said Voting Board that the proposition of withdrawal should be formally submitted and referred to the membership of the association pursuant to and because of the terms of said membership agreement and said by-laws, which said membership should determine by a majority vote of the members so voting whether or not it should incorporate into the membership agreement of the association and the marketing agreement of the association and the by-laws of the association a provision to the effect that any member of the association might withdraw from the association and from said membership agreement and said marketing agreement by giving notice of his withdrawal in the period of March 15th to March 31st, inclusive, of the year 1926. Said marketing agreement is attached hereto marked 'exhibit D' and is hereby made a part hereof. That said proposition of withdrawal was pursuant to said resolution so adopted by said voting board on the 29th day of June, 1925, duly submitted by referendum ballot to the entire membership of said association, and a majority of the members who voted on said proposition voted for and declared in favor of said proposition of withdrawal. That said proposition of withdrawal was referred and submitted to the membership regularly and in the manner provided by the by-laws of said association; and that the votes of the members so voting on said proposition of withdrawal were duly and regularly counted and canvassed in the manner provided by the by-laws of the association. That notwithstanding that a majority of said members so voting for said proposition of withdrawal voted in favor of said proposition, the said voting board and the directors of said association and the said association have failed, neglected and refused to abide by the said vote of the majority of said members so voting for said withdrawal proposition, and have refused to act pursuant to the vote of the majority of said members so voting in favor of said withdrawal proposition, and have failed, neglected and refused to incorporate into the membership agreement of the association or into the marketing agreement of the association, or into the by-laws of the

association any clause permitting any member of the association to withdraw from the association by giving notice of his withdrawal in the period between the 15th day of March and the 31st day of March, inclusive, 1926, or at any other time, or in any manner or at all. That the said Voting Board and the directors of said association and said association wholly and absolutely ignored the vote of a majority of the members so voting for said withdrawal proposition and this notwithstanding the fact that a majority of the members so voting voted in favor of said withdrawal proposition as aforesaid. That in the period of March 15th to March 31st, inclusive, of the year 1926, each of the plaintiffs hereinabove named duly and regularly gave notice to said association of his withdrawal from membership in said association and from the membership agreement in said association, but that said defendants have failed, neglected and refused to act upon said notices or any of them, and said association has announced that its Voting Board and its board of directors and the association have refused to adopt in any form any proposition of withdrawal or any proposition which will permit any of its members to withdraw by giving notice in any form or at any time, and the said association, contrary to the vote of a majority of its members so voting upon the said proposition of withdrawal, has refused and still refuses to permit any of its members to withdraw upon notice, or otherwise, or at all, and the said association has threatened to file suit against any member of said association whether such member has given notice of withdrawal or not in accordance with the vote of a majority of the members so voting in favor of said withdrawal proposition, and said association in fact will carry out its threat and will file suit against any member who fails to deliver his fruit to the said association in accordance with the terms of said membership agreement and said marketing agreement of said association, and that said association will file such suit against any member failing to deliver his said fruit in an effort to collect from such member the amount of penalty provided by the membership agreement and/or the said marketing agreement and/or the by-laws of said association, and this whether or not such member has duly and regularly given notice of withdrawal from the association. That at the time each

of the plaintiffs herein gave his notice of withdrawal from said association, each of the said plaintiffs was a member in good standing of said association, and that each of the plaintiffs has performed on his part all of the terms, covenants and conditions of said membership agreement and the said marketing agreement on his part to be performed; and that each of the plaintiffs has complied with all of the provisions of the by-laws of the said California Prune and Apricot Growers Association, a corporation, on his part to be complied with. That prior to the filing of this petition demand has been made upon said defendants and each of them that it act pursuant to and in accordance with the vote of the majority of the members so voting on said withdrawal proposition, but notwithstanding said demand the said association. has failed, neglected and refused to act in° accordance with and pursuant to the vote of a majority of the members so voting on said withdrawal proposition, and has refused to permit any of its members to withdraw from said association upon notice or otherwise, or at all. That said plaintiffs do not have, nor does any of them have any plain, speedy and adequate remedy at law; that if the question as to whether or not the said notice of withdrawal given by each of said plaintiffs is or was effective for the purpose of accomplishing the withdrawal of each of said plaintiffs from said association is not promptly determined, the fact that said question remains open and in doubt will affect the credit of each of said plaintiffs and will hamper him in his business operations and will render it hazardous for any of said plaintiffs to sell his apricots and deliver the same to any independent purchaser, or to anyone at all, other than to said association, and will cause each of said members irreparable loss and injury; and that a determination of the right of each or any of the plaintiffs hereinabove named will avoid and prevent a multiplicity of suits.'' The petition prays for a judgment that a peremptory writ of *mandamus* issue ''commanding the said defendant association, its Voting Board and its board of directors to abide by the vote of the majority of the members so voting at said referendum election, and commanding the said association, its Voting Board and its board of directors to incorporate into the by-laws a clause to the effect that any

of its members duly and regularly giving notice of withdrawal in the period between March 15th and March 31st, inclusive, 1926, may withdraw from the association and from membership therein; and commanding the said association to permit each of the plaintiffs hereinabove named to withdraw from said association in accordance with the notice of each of said plaintiffs heretofore duly and regularly given to said association; and for such other judgment or order as may be proper.''

Defendants and respondents demurred generally and specially to the petition. It is to be assumed that the trial court sustained the general demurrer, since the demurrer was sustained without leave to amend. We therefore proceed to the discussion whether the petition states a cause of action. Article eight of the articles of incorporation of said association states that the association may provide in its by-laws ''the conditions upon which, and the time when, membership may cease,'' and the mode, time and manner of withdrawal. The by-laws of the association created a voting board with proxy and power of attorney to represent the interests of all members of the association, which said proxy and power of attorney was to remain in force for the full period of seven years from July 31, 1921. Article eight of the by-laws provides that ''no member shall be permitted to withdraw from membership in the association during the term of any marketing agreement signed by him.'' The by-laws further require that ''each member must agree to market the prunes and apricots grown or owned by him in accordance with the provisions of the standard marketing agreements'' referred to therein; and provide for stipulated damages in accordance with said marketing agreements. A copy of the marketing agreement is attached to the by-laws and is required to be signed by each member of the association. Paragraph 2 of the marketing agreement provides as follows: ''The association agrees to buy and the grower agrees to sell and deliver to the association all of the prunes and apricots and apricot pits produced or acquired by or for him in California, during the years 1922, 1923, 1924 and 1925; and, at the option of the association, the years 1926, 1927 and 1928. This option shall be irrevocable; and shall cover the total period of three years; . . .'' The marketing agreement

further provides that the association shall grade and classify the prunes and apricots, and the grower agrees to accept the gradings and standards established by the association. Sections 6 and 7 of the marketing agreement provide that: ''The association agrees to resell such prunes and apricots together with prunes and apricots of like quality, grade and classification, delivered by other growers under similar contracts, at the best prices obtainable by it under market conditions; and to pay over the net amount received therefrom, as payment in full, to the grower and growers named in contracts similar hereto, according to the value of the prunes and apricots delivered by each of them after deducting therefrom, within the discretion of the association, the costs of packing, processing, manufacturing, handling, storing, depreciation, advertising and marketing, and an association charge of not to exceed three per cent of the gross resale proceeds. . . . The grower agrees that his prunes and apricots shall be so mingled and that the net returns therefrom, less all costs, advances and charges, shall be credited and paid to him on a proportional basis, considering all differentials and adjustments, out of the receipts from the sale of all prunes and apricots of like quality, grade and classification.'' Section 12 of the marketing agreement reads as follows: ''This agreement shall be binding upon the grower as long as he produces or acquires any prunes or apricots directly or indirectly, or has the legal right to exercise control of any prunes or apricots or any interest therein during the term of this contract.'' Section 15 of the marketing agreement states that: ''This agreement is one of a series generally similar in terms, comprising with all such agreements, signed by individual grower, or otherwise, one single contract between the association and the said growers, mutually and individually obligated under all of the terms thereof. The association shall be deemed to be acting, in its own name, for all such growers in any action or legal proceedings on or arising out of this contract.'' Section 16 of the marketing agreement contains the following provision: '' . . . the grower hereby agrees to pay to the association for all prunes and apricots and pits withheld, delivered, sold, consigned or marketed by or for him other than in accordance with the terms hereof the sum of two cents per pound of prunes, and particularly the sum of

four cents per pound of prunes running larger than thirty to the pound and the sum of four cents per pound of apricots and one-half cent per pound of apricot pits, as liquidated damages for the breach of this contract, all parties agreeing that this contract is one of a series dependent for its true value upon the adherence of each and all of the growers to each and all of the said contracts.''

■ As alleged in the petition, on June 29, 1925, the said voting board adopted the resolution hereinbefore mentioned relating to a proposed right of withdrawal in March, 1926. While the resolution is not in form a proposed amendment of the by-laws, yet the petitioners urge that in effect the by-laws were amended in a manner provided therein, for the reason that the by-laws provide that on written demand or vote of sixteen of the voting board any particular problem of the association shall be referred to the full membership of the association, and that the voting board shall thereupon vote as a unit as a majority of the association members so voting shall determine. It may well be questioned whether the resolution so adopted by the voting board and by a majority of the members of the association constituted an attempted amendment of the by-laws; but conceding that it was attempted to amend the by-laws in the manner stated, we are of the opinion that such attempted amendment was of no force or effect, for the reason that the provisions of the by-laws and of section 304 of the Civil Code expressly state that the by-laws may be amended by the vote or written consent of two-thirds of the members of the corporation. To permit a majority of the members of the association voting to require the voting board to vote as a unit for the amendment of the by-laws would, in effect, permit an indirect amendment of the by-laws by a minority of the members of the association, when both the Civil Code and the by-laws require the vote or written consent of two-thirds of the members of the association in order to amend the by-laws. ■ There must be a substantial compliance with the provisions of the law before the by-laws can be amended. When either the general law or the charter of the corporation prescribes the mode in which by-laws may be adopted, the by-laws which the corporation seeks to make must be adopted in such mode in order to be valid. (*Powers* v. *Marine Engi-*

*neers' Beneficial Assn.,* 52 Cal. App. 551 [199 Pac. 353].)
Further, it should be noted that the duty which appellants are seeking to enforce is not a ministerial duty. The proposition of withdrawal set out in appellants' petition does not constitute an amendment to the by-laws, but merely submits a proposal to the membership "whether or not they want a withdrawal clause providing for withdrawal in March, 1926." If a by-law permitting withdrawal were to be ordered adopted, who is to determine the terms and conditions upon which withdrawal is to be permitted? Certainly the trial court has no authority- to control the discretion to be exercised by the respondent members in framing a by-law containing the terms and conditions of withdrawal. As stated in *Bassett* v. *Atwater,* 65 Conn. 355 [32 L. R. A. 575, 32 Atl. 937], one of the requisite conditions for the issuance of the writ of *mandamus* is that "the party against whom the writ is sought must be under an obligation, imposed by law, to perform some such duty— that is, a duty in respect to the performance of which he may not exercise any discretion."

It is fundamental and conceded by appellants that *mandamus* does not lie to enforce the obligation of contracts. It lies only to enforce the performance of an act which the law specially enjoins. (*Howe* v. *Southrey,* 144 Cal. 767, 769 [78 Pac. 259]; *Barber* v. *Mulford,* 117 Cal. 356 [49 Pac. 206]; *Moreing* v. *Shields,* 28 Cal. App. 513 [152 Pac. 964]; Code Civ. Proc., sec. 1085.) There is an exception to the foregoing rule where a contract creates a relation upon which the law imposes rights and duties enforceable by *mandamus.* Appellants contend that they are only asking the court to compel the performance of a duty which the law specially enjoins. We cannot agree with this contention. As appears from the membership and marketing agreements, the relation between the members of the California Prune and Apricot Growers Association 'was purely contractual. As stated in *California Canning Peach Growers* v. *Downey,* 76 Cal. App. 1, at page 15 [243 Pac. 679, 684]: "Every member of the association must, of course, be held to have knowledge of all of these elements which enter into cooperative marketing agreements. They are not simple agreements entered into with an agent, although a few people may be selected to act in the capacity

of officers to manage the business of the association. The agreements are essentially to and with all the other members of the cooperative association and the interests of every member rest upon the same. foundation, and no member can be advantaged to the detriment of any other member. Of all this each member must also be held to have full knowledge, as the contract sets forth all of these facts in equalizing burdens and advantages.'' We know of no statute or law requiring or permitting a corporation to amend its by-laws so as to provide for withdrawal of its members, or at all, without the consent of at least two-thirds of its members. Neither are we cognizant of any duty enjoined by law upon any officer of any corporation requiring them to adopt such amendments to by-laws. Neither do we believe this case comes within the exception to the rule, since we do not find that the contract between the members created any relation upon which the law enjoins rights and duties enforceable by *mandamus*. In fact, the contract between the members expressly provides that the agreement shall be binding, at the option of the association, for the year 1926; and that this option shall be irrevocable, and the by-laws further prohibit withdrawal from membership during the term of any marketing agreement.

█ Appellants urge that plaintiffs did not have a plain, speedy and adequate remedy at law. If the appellants, as they claim, were entitled to withdraw from respondent association, such a withdrawal could be set up as a defense to any action brought by respondent association to enforce its contract rights for the delivery of apricots.

For the reasons hereinbefore stated, the complaint, in our opinion, does not state facts sufficient to constitute a cause of action; and it further appears from the record that it is not possible to amend the complaint so as to state a cause of action in this proceeding.

The judgment is affirmed.

Conrey, P. J., and York, J., concurred.