No. 23,185.

JOHN ROWLAND, *Appellant*, v. PETER DECK et al., as Members of the Board of County Commissioners of the County of Reno et al., *Appellees.*

### SYLLABUS BY THE COURT.

1. MUNICIPAL BONDS—*Improvement of Highway—Rate of Interest— Price at Which Bonds May Be Sold.* Where a statute authorizes the issuance of bonds bearing not more than a stated rate of interest, and provides for their sale without making an express requirement as to the amount they shall bring, bonds issued thereunder which bear the maximum interest named may be sold at a discount if the sale is made on the best terms obtainable.

2. SAME—*Issuance of County Warrants in Excess of Amount Actually Due.* The statute which forbids the issuance of county warrants in a

larger amount than that actually due, in order to compensate creditors for the fact that they cannot be immediately paid and if sold would be subject to discount, does not prohibit the sale of bonds at less than par.

3. SAME—*Road Improvements—Proportion of Costs Chargeable to County—To Be Paid by Taxation—Bonds Sold at Discount.* The statute authorizing the issuance of bonds to provide for the payment of the proportion of the cost of road improvements chargeable against the county contemplates the raising by taxation of a sufficient fund to pay such bonds and the coupons thereof, even if by reason of the bonds being sold at a discount the taxes levied to meet the principal shall exceed the county's share of the cost of the improvement.

4. SAME—*Bonds May Be Issued as Road Improvement Progresses.* The provision of the statute that after estimates of the cost of a road improvement have been filed, and the cost to be assessed against the county approximately determined therefrom, the commissioners may issue bonds from time to time as required, in the absence of any expression to the contrary, implies that after the steps referred to have been taken it rests with the board to determine when such issuance is required.

5. SAME—*Form of Bid for Purchase of Bonds—Bonds Not Invalidated.* The fact that in an offer to buy bonds from the body issuing them the bidder describes the discount at which he is willing to take them as a deduction to cover expenses has no effect upon the validity of the contract resulting from an acceptance of the bid.

6. SAME—*Good Faith of County Commissioners.* The question of the exercise of good faith on the part of the commissioners in the issuance and sale of bonds is held to have been settled in their favor by the decision of the trial court.

Appeal from Reno district court; FRANK F. PRIGG, judge. Opinion filed February 12, 1921. Affirmed.

*Frank L. Martin, John M. Martin,* and *Walter F. Jones,* all of Hutchinson, for the appellant.

*William H. Burnett,* county attorney, *A. C. Malloy, Roy C. Davis, Warren H. White, F. Dumont Smith, Eustace Smith,* all of Hutchinson, *Chester I. Long, Austin M. Cowan, Forest D. Siefkin, Claude I. Depuy,* and *James G. Martin,* all of Wichita, for the appellees.

The opinion of the court was delivered by

MASON, J.: John Rowland as a taxpayer of Reno county brought an action against the board of county commissioners, joining other parties in interest as defendants, seeking to enjoin the delivery to the Brown-Crummer Company of a quan-

tity of bonds in pursuance of a contract between that company and the county, the validity of which is attacked by the plaintiff. A temporary injunction was refused and this appeal is taken from that ruling.

1. The bonds were issued under provisions of the statute relating to improvement of highways, reading: "the board of county commissioners may issue from time to time as required, bonds of the county, bearing not to exceed five per cent interest, . . . Said bonds . . . shall be disposed of by the county board in the manner provided by law, and the proceeds thereof shall be deposited with the county treasurer in the special fund for the improvement." (Laws 1919, ch. 246, § 6.) The statute contains no more specific provision with respect to the manner in which the bonds are to be disposed of, either in the way of authorization or restriction. We think the intention clearly is that the bonds are to be sold by the county commissioners, the proceeds to form a part of the fund out of which warrants issued for the improvements shall be paid. The bonds in controversy bore interest at 5 per cent. The contract referred to provided for their sale at a discount of 10.03 per cent—an arrangement under which the county would be paying practically 6 per cent interest on the amount actually received for them. The plaintiff contends that the provision of the statute that the bonds shall bear not to exceed five per cent interest should be interpreted as meaning that the county shall not pay more than 5 per cent interest for the money it borrows by means of their issuance, and that the contract of the county with the Brown-Crummer Company is void because it calls for the payment of a higher rate. The defendants maintain that the provision is intended merely as a description of the kind of bond that is to be issued, and inasmuch as the statute contains nothing to the contrary the bonds may be sold for whatever they can be made to bring. This question is therefore presented, the plaintiff contending for a negative and the defendants for an affirmative answer: Where a statute authorizes the issuance of bonds bearing not more than a stated rate of interest, and provides for their sale, no express requirement being made as to the amount they shall bring, may bonds issued thereunder, which bear the maximum interest named, be sold at a discount?

There are no Kansas cases bearing directly upon the question. The defendants quote this sentence in support of their contention: "Where a city places its bonds on the market it must dispose of them at the market price." (*Clay Center v. Williamson,* 79 Kan. 485, 488, 100 Pac. 59.) This language was used in discussing the loss to a city occasioned by an injunction which delayed the sale of its bonds until their market value had depreciated, and can shed no light upon the interpretation of the statute here involved. *The City of Atchison v. Butcher,* 3 Kan. 104, has been cited (28 Cyc. 1597, note 47) as sustaining the view of the plaintiff. The statute there involved, however, was interpreted as in effect providing for the exchange of bonds for railroad stock rather than for their sale. The scope of the decision is indicated by this extract from the opinion, the sentence deemed especially important in this connection being here italicised:

"The act of the legislature authorizing the subscription and the issuing of the bonds . . . authorized the city 'to issue bonds for the stock, or for money to pay for the same, bearing interest at the rate of ten per cent per annum.' *It was not authorized to sell the bonds and thus raise money to pay for the stock.* If that course were adopted and the bonds sold below par, the rate of interest would be increased above what the law authorized. It certainly was not contemplated that the value of the stock would be above par, nor could it have been expected that the bonds would have been worth less than the stock. If the bonds could lawfully be bartered at a discount, then if the money was borrowed upon them, the stock might have been bought at a premium, which certainly was not contemplated. The proper construction of the provision is that this stock might be paid for at par in bonds at par, or paid for in money borrowed at ten per cent per annum." (p. 120.)

The supreme court of Washington in a series of decisions has apparently returned a negative answer to the question stated, although its conclusions may be due to a peculiarity of the local statute. (*Uhler v. Olympia,* 87 Wash. 1; *Spear v. Bremerton,* 90 Wash. 507; *Hill v. Seattle,* 108 Wash. 572.) These cases concede that the grant of authority to sell bonds carries with it the power to sell them below par unless by reason of some affirmative provision of law to the contrary, a doctrine that appears to be generally accepted. (Note, Ann. Cas. 1914 B, 257.) But the Washington court interprets a statutory provision that a city may issue and sell bonds or warrants, payable out of a special fund bearing interest not

exceeding six per cent per annum, as imposing a limitation on the rate of interest the municipality shall be required to pay computed on the amount of money it receives for its bonds. If under that statute the bonds had been so drawn as to bear five per cent interest on their face a sale at a discount would have been upheld so long as it was not less favorable to the municipality than six per cent basis. (*Hill v. Seattle,* supra.) In the first of the Washington cases above cited the transaction involved is condemned as "usurious," the court saying, "A statute fixing a maximum rate of interest may not be evaded at will by any device or contrivance which will insure a greater return of interest than the law allows." (*Uhler v. Olympia,* 87 Wash. 1, 11.) The statute described as "fixing a maximum rate of interest" is that authorizing a city to create a special fund for the purpose of defraying the cost of a public utility and "to issue and sell bonds or warrants bearing interest not exceeding six per centum per annum . . . payable only out of such special fund." (Rem. & Bal. Code, [Wash.] § 8008.) It is possible that the exceptional phraseology, and the classification of the bonds with warrants in the provisions regarding the rate of interest and the special fund, may account for the court's characterizing as usurious a transaction by which the city was to pay more than six per cent interest upon the money it obtained by the sale of its bonds.

On the other hand, the supreme court of Oregon has held that bonds issued under a statute fixing definitely their rate of interest may be sold at a discount, saying in the opinion:

"The provision as to the amount of bonds to be issued, their denomination, and the rate of interest they shall bear has reference only to the form of the bonds and the method in which they shall be executed, in order to prepare them for sale." (*Kiernan v. City of Portland,* 61 Ore. 398.)

In a Washington case earlier than those already cited it was held that where the resolution calling an election on a proposition to issue port-district bonds provided that they should bear interest at not to exceed the rate of four and one-half per cent per annum, they might be legally sold below par, and at such a price as to require the payment of more than four and one-half per cent on the amount received. In the opinion it was said:

Rowland v. Reno County.

"Assuming that the rate of interest stated in the original resolution upon which the election was held is binding upon the commissioners, so far as the form of the bond is concerned, we think it, in any event, goes no further than this, since there was nothing therein relating to the price at which the bonds should be disposed of, and there is nothing in the Port District Law to that effect." (*Paine v. Port of Seattle,* 70 Wash. 294, 317.)

In Tennessee the sale at a discount of bonds issued under a statute providing that they should bear six per cent interest has been upheld, the court saying:

"Assuming that these authorities establish the entire negotiability of the city bonds, and the right of the city officers to sell them in market as chattels, it is clear that under the authority to sell them at their market value, although that might be at a greater discount than legal interest, the transaction would be neither usurious nor illegal, and therefore the city can neither raise a question of usury nor of scaling." (*City of Memphis v. Bethel* [Tenn.], 17 S. W. 191, 194.)

We accept the view that the provisions of the road statute as to the rate of interest the bonds shall bear has reference to the terms in which they shall be drawn and is not intended as a restriction upon the price for which they shall be sold. The established doctrine that bonds may be sold at a discount unless such course is forbidden recognizes the obvious distinction between the rate of interest provided in the bond itself and what the municipality issuing it actually pays for the use of the money it borrows by means thereof. If bonds issued under a statute requiring them to draw interest at a definite rate should be sold at a premium no one would think of challenging the validity of the sale on the ground that the debt did not actually bear the rate of interest fixed by law.

"That the bonds of a municipal corporation may be sold by it for less than par must be regarded as the general understanding of lawmakers of the states, as well as the officers of the municipalities, because, when it is desired to prevent such sale, that fact is incorporated in the enabling act or in the ordinance or resolution providing for the issue of the bonds." (Simonton on Municipal Bonds, § 145.)

It is true that in the view we are taking the provision of a statute that bonds issued under it shall bear interest not to exceed a certain rate puts no limitation upon the actual compensation the municipality shall pay for the use of the proceeds. But in our judgment it has no such purpose; the maximum rate of interest is fixed as a part of the description of the character

of the instrument that is to be executed—just as requirements are often made that the demoninations shall be between certain amounts, and that the interest and principal shall be payable at times and places stated. It is quite conceivable that the legislature might as a matter of appearance, for the credit of the state, refuse to countenance the issuance of municipal bonds bearing on their face a rate of interest higher than the ordinary legal rate for personal obligations, even if it should be anticipated that conditions might require a sale on the basis of a larger return to the borrower. Where it is desired by the lawmaking body to restrict the amount for which bonds may be sold the custom in this state and elsewhere is general to insert a clause in the statute to the effect that par or better must be obtained for them; this practice is so common that the omission of that or some other provision expressly covering the subject creates a strong presumption that the legislature was content to rely upon the good faith and business judgment of the local officials to see that the bonds brought substantially the market price, which would necessarily be controlled by financial conditions. The defendants' brief contains a compilation of Kansas statutes authorizing the issuance of bonds, classified with respect to the limitations placed upon the sale. Of some eighty acts about thirty impose no restrictions upon the price to be obtained, while about fifty require a sale at not less than par. In but two instances, so far as we discover, has such a restriction been imposed by a general statute with respect to county bonds, and these in the case of bonds issued to fund outstanding bonds or warrants. (Gen. Stat. 1915, §§ 642, 2876.)

It is quite obvious that a provision that bonds should not be sold less favorably to the county than on a basis of five per cent interest might absolutely prevent their sale at all and thus block the contemplated improvement altogether. It cannot be reasonably hoped that bonds in considerable quantities can be sold at any appreciable advance over the market price. The fact that government bonds have been bought and sold on more than a six per cent basis shows that the contingency suggested is by no means improbable. The clause of the act of 1919 which we are now considering is similar to that of the 1917 statute (Laws 1917, ch. 265, § 9), which provided for

the issuance of the bonds only after the improvement had been completed. It is hardly conceivable that the legislature intended to authorize the construction of a hard-surface road and provide for the payment of a large part of the cost only from the proceeds of bonds for which it might be impossible to find a buyer owing to the restrictions placed on the sale.

Upon these grounds we hold that where a statute authorizes the issuance of bonds bearing not more than a stated rate of interest, and provides for their sale without making an express requirement as to the amount they shall bring, bonds issued thereunder which bear the maximum interest named may be sold at a discount if the sale is made on the best terms obtainable.

2. As bearing upon the question already discussed the plaintiff refers to the statute which forbids the commissioners to allow a greater sum on a claim against the county than the amount actually due thereon, dollar for dollar, or to issue warrants for more than the amounts so allowed. (Gen. Stat. 1915, § 2873.) The obvious purpose of this provision is to prevent the allowance of accounts in a larger sum than the amount due, in order to compensate for the fact that the warrants issued thereon cannot be immediately paid and if sold are subject to a discount. The reason for such legislation is that warrants—mere orders on the treasurer—are not primarily intended for sale on the market, while bonds are. That the section cited does not evince a general policy against the financial standing of a county affecting its business transactions appears from the fact that provision is therein made for the board adopting such measures as it may deem proper to liquidate claims for rents, fuel, lights and stationery—supplies which are necessary and which might not be procurable except for the equivalent of cash.

3. What may be regarded as another phase of the question first discussed arises upon a contention of the plaintiff that taxes cannot be levied in excess of the actual cost of the improvement, and therefore there is no way in which the difference between the face of the bonds and what the county receives from their sale can be met; stated in another way the contention is that the board of commissioners cannot issue bonds in excess of the proportion of the actual cost of the improvement

which is chargeable to the county. The plan of the statute is that warrants shall be issued for the work done, funds for paying the warrants to be provided by the county's issuing and selling enough of its bonds to raise the amount of money apportioned to it. It cannot be literally true that the amount to be raised by taxation cannot exceed the cost of the improvement because by reason of the sale of bonds maturing in the future taxes will have to be levied to meet not only the principal but interest payments through a term of years. But disregarding the matter of interest the county must raise by taxation the amount necessary to pay the face of the bonds, which need not be the same as the county's proportion of the cost of the improvement; if the county is fortunate enough to sell its bonds at a premium the amount it will be required to raise by taxation to pay the principal will be less than its share of the cost of the improvement; if on the other hand it is compelled to sell its bonds at a discount it will be required in order to meet the principal to levy taxes sufficient to yield a somewhat larger sum than its share of the cost of the improvement.

The statute provides that no contract shall be let in excess of the estimated cost (Laws 1919, ch. 245, § 8) ; that one-half the cost not provided for by Federal or state aid, donations and special assessments shall be apportioned to the county (Laws 1919, ch. 246, § 5) ; and that the total amount of bonds issued *previous to completion of the improvements* shall not exceed the amount of the estimated cost to be assessed against the county and township, and a final series of bonds shall be issued after such completion. (Id., § 6.) We discover nothing in these or other statutory provisions that condemns the issuance by the county of bonds the face value of which in the aggregate shall exceed its share of the cost. Upon this proposition the defendants quote the language of this court in a former opinion: "The bonds may therefore be issued as the work progresses, taking care of course, to limit payments upon estimates so as to protect the public and to see that the remainder of the fund is amply sufficient to complete the improvement." (*The State, ex rel., v. Raub,* 106 Kan. 196, 205, 186 Pac. 989.) This language was immediately preceded by the words: "The proceeds of the bonds when issued and disposed of are to be deposited with the county treasurer in the special fund which is provided

for the improvement." The question under discussion was whether bonds could be issued before the completion of the improvement. These circumstances in connection with the reference to payments upon estimates show that the court was speaking of the need of holding back a part of each estimate as one of the matters that might affect the time when bonds should be issued.

4. At the time the agreement for the sale of the bonds was made contracts for construction had been entered into with respect to four of the seven sections of road project number 27, but not with respect to the other three. The provision of the statute concerning the time of issuance of the bonds reads:

"After the approved estimates have been filed with the county clerk and the cost to be assessed against the taxable property of the county and township has been approximately determined by deducting from the total estimated cost all donations, subscriptions, state aid or Federal aid that have been granted or promised, the board of county commissioners may issue from time to time as required, bonds of the county. . . ." (Laws 1919, ch. 246, § 6.)

The specific requirement that the bonds shall be issued only after the filing of the estimates, and the approximate determination therefrom of the county's share of the cost, fairly implies that thereafter it rests with the board to determine when their issuance is required—that there is no other hard and fast prerequisite. It cannot be said as a matter of law that conditions might not exist making it advisable to put the entire issue upon the market at once, and if it should be conceded that an error of judgment was committed the fault is not one to be corrected by a court. The commissioners were necessarily charged with determining the details of the transaction that were not fixed by the statute and their determination could only be set aside for bad faith or its equivalent.

5. In the contract for the purchase of the bonds the Brown-Crummer Company agreed to pay par and the accrued interest "less a deduction of 10.03% to cover bidder's expenses including preparation of bonds, etc." The trial court characterized "the reasons set out for the discount" as mere "camouflage," which did not change the legal effect, no question of agency being involved. The deduction was of course not a commission. It was the discount at which the bidder offered to take the

bonds—the deduction from par necessary to make the deal attractive to it either on account of the interest it would receive while holding the bonds, or more likely by reason of the opportunity given for a satisfactory profit by a later resale. If the statute had forbidden the sale of the bonds by the county at less than par the contract would have been invalid and could not have been saved by calling the deduction an allowance for expenses. On the other hand, inasmuch as the statute is held not to impose that restriction, the term applied did not vitiate the agreement for it could not in either case change the essential character of the deduction as a discount.

6. In the district court one of the contentions of the plaintiff was that the contract for the sale of the bonds was not entered into in good faith—that the commissioners (or the two members of the board by whose concurrence the action was taken) were not actuated by an honest purpose to serve the interest of the public. Oral evidence was introduced bearing upon the matter and the decision of the trial court must be regarded as finally determining this issue of fact in favor of the defendants. It was specifically found, what would have been implied by the general finding, that the commissioners acted in good faith; that they took the advice of bankers who were versed in the conditions of the market, and of lawyers, and sold for the best price obtainable under the existing conditions; that government bonds were selling at a price to realize a much higher rate of interest; and that a sale at par could not have been made.

The order denying the application for an injunction is affirmed.