15 P.(2d) 674

## JACOBSON v. MIDDLE RIO GRANDE CONSERVANCY DIST. et al.

No. 3860.

Supreme Court of New Mexico.
Nov. 4, 1932.

Rehearing Denied Nov. 5, 1932.

W. A. Keleher, of Albuquerque, for appellant.

Pearce Rodey and Joseph L. Dailey, both of Albuquerque, for appellees.

WATSON, J.

This is a taxpayer's suit to enjoin a sale of the bonds of the Middle Rio Grande conservancy district, organized and operating under 1929 Comp. St. c. 30 (section 30-101 et seq.). The appeal is from a final judgment dismissing the complaint; a demurrer to it having been sustained.

The issue of $8,700,000 of bonds, maturing serially between 1934 and 1973, and bearing interest at 5½ per cent., payable semi-annually, was heretofore authorized by proceedings not questioned. Sealed bids were asked by public advertisement in 1929. No bids

were received, but a part of the bonds was disposed of by private sales.

A second advertisement was made for bids to be opened in May, 1931. Its sufficiency is unchallenged. Again there were no bids, and again private sales were effected which, with certain bonds canceled and retired, reduced to $5,784,000 the amount of the authorized issue now available for sale.

On October 27, 1932, the district board agreed with the Reconstruction Finance Corporation upon a sale of the remainder of these bonds at 90 cents on the dollar. This sale it is sought to enjoin. The agreement contemplates the delivery and acceptance of the bonds in blocks as the avails are required by the district, on its requisitions prior to January 22, 1934, when the present authority of the Reconstruction Finance Corporation to make such investments will lapse; such blocks to have substantially the same average maturities. The present requisition is for $400,000 of the bonds, to be delivered November 10, 1932.

Two points are made against the validity of this sale: First, that the advertisements heretofore made, resulting in no bids, will not support it. Second, that the 10 per cent. discount combined with the 5½ per cent. interest are less favorable terms than the statute requires.

These matters are controlled by the following statutory provisions:

" * * * No bonds of the district shall be sold until after notice of such sale has been published * * * once a week for four successive weeks preceding such sale, describing such issue and terms, and fixing a time and place for receiving and opening sealed bids.

"The board may reject all offers or bids received as a result of such notice, and then sell such bonds at private sale; but the board shall not sell such bonds at private sale on terms less advantageous to the district than the best bid so received until after such public sale has been again advertised." 1929 Comp. St. § 30-506 (2), excerpt.

"Said bonds, if bearing less than six per cent. interest, may be sold below par, but they shall be sold at such a price that the total payment of principal and interest shall not be greater than would have been required if the bonds had borne six per cent. interest and had been sold for par and accrued interest." Id., excerpt.

■ Under the first point the contention is that readvertisement is necessary to authorize this private sale. Why? The statute requires readvertisement in one case only: If it is proposed to make a private sale on terms less advantageous than the best bid received in response to the previous advertisement and rejected. That situation is not presented. The reason for such requirement readily suggests itself and does not exist here. The board has done all that the statute requires except to reject all bids, a formality quite unnecessary where no bids are before it.

Though the statute seems to contemplate that some bids will be received as the result of an advertisement, it does not make such a bid a prerequisite of a subsequent private sale. Neither the Legislature nor the board could force any one to bid. The Legislature has given its approval to private sales. Should we lay it down that there could be no such sale until the receipt of some bid in response to an advertisement, we might in some cases, perhaps in this, prevent any sale, nullify the legislative authorization of private sales, and, by reading into the statute what is not there, hinder or defeat its purpose. Two advertisements having produced no bids, there is no assurance or probability that another would result differently. The complaint sets forth no changed conditions. It stands on a point of naked illegality. Such illegality is not found in the statutory language. Is it to be found in its spirit or intent?

No doubt a reason for the requirement of advertising is to afford a measure of value and to limit the board's discretion in negotiating private sales. But this is not the only limitation on such discretion. Another is found in the second of the quoted statutory excerpts. That provision fixes an absolute minimum. The limitation effected by a previous bid operates only upward from this minimum. No bid less favorable could be accepted or could affect the case. When no bids result, it is established that there is no existing market for the bonds at the minimum statutory price. We find nothing in the statute or in principle to prevent the board from proceeding then with a private sale. Fortunately it is now able to dispose of the bonds through an extraordinary agency, created by the Congress for the purpose of making a market where none existed, and of enabling projects such as this to continue, as one means of relieving unemployment.

It is suggested that the 1931 advertisement is stale, and does not demonstrate a present lack of an ordinary market for these bonds on the minimum statutory terms, or better. The Legislature might have required readvertisement in such cases. Not having done so, it must be deemed to have left to the discretion and good faith of the board to readvertise or not, according to its sound judgment. As above suggested, nothing in the complaint points to any abuse of such discretion or even suggests that the board's judgment in making this sale without the delay and expense of readvertising is unsound or is disadvantageous to the district.

■ Finding no merit in the first point, we pass to the second. It is based upon the conceded fact that these 5½ per cent. bonds, sold at 90, will yield interest slightly exceeding 6 per cent.

To maintain the point, appellant is compelled to urge that the statutory excerpt second above quoted prohibits such yield. He admits that the prohibition is not express, but contends that such is its meaning and intent.

As we read and understand the provision, we cannot accept this interpretation. The

purpose of the provision is to control the discretion of the board by prescribing minimum terms of sale. A criterion is set up, being the total payment required if the bonds bore 6 per cent. interest and were sold for par and accrued interest. It is the actual "total payment of principal and interest" which is not to exceed this criterion. By computations included in the complaint itself, and admitted by the demurrer, it appears that the total payments of principal and interest contracted for, including the 10 per cent. discount, will be substantially under the criterion established.

So we have a case where the invester will realize, and the district pay, more than 6 per cent. interest, but where the total payments or repayments by the district will be less than would have been required if the bonds had borne 6 per cent. interest and had brought par. The difference arises from the fact that the discount suffered is in practical effect, so far as concerns cost to the district and actual yield, additional interest paid in advance. But this is a difference which the Legislature cannot have overlooked. It originally required that the bonds be sold at par or better. L. 1923, c. 140, § 506 (2). It changed this policy for one probably better meeting the requirements of bond buyers and better suited to the ready marketing of the securities. In authorizing sales at less than par, it might easily have limited the discount to hold the interest yield to 6 per cent. It saw fit rather to adopt the provision of the Ohio and of the Colorado Conservancy acts. Laws of Ohio 1914, pages 13 et seq., § 47;

Laws of Colorado 1922 (Ex. Sess.), c. 1, p. 50, § 46. It limited total payment, not interest yield. The two limitations being different, and the one being that of the statute, there can be no virtue in the contention that the courts should enforce the other.

We thus conclude that the judgment should be affirmed, and the cause remanded. It is so ordered.

BICKLEY, C. J., and SADLER and HUD-SPETH, JJ., concur.