[S. F. No. 14830. In Bank.—April 12, 1933.]

GOLDEN GATE BRIDGE AND HIGHWAY DISTRICT (a Public Corporation), Petitioner, v. WILLIAM P. FILMER, as President of the Board of Directors of GOLDEN GATE BRIDGE AND HIGHWAY DISTRICT (a Public Corporation), et al., Respondents.

George H. Harlan, W. H. Orrick and Orrick, Palmer & Dahlquist for Petitioner.

Chas. Albert Adams and Adams & Adams for Respondents.

WASTE, C. J.—The Golden Gate Bridge and Highway District initiated this proceeding in *mandamus* to compel the respondents, its president and secretary, to execute bonds of the District in the principal amount of $200,000, a portion of an issue of $35,000,000 authorized at an election held in the District November 4, 1930, for the purpose of raising funds for constructing a bridge across the Golden Gate. The validity of these bonds was upheld by this court in *Golden Gate Bridge & Highway District* v. *Felt*, 214 Cal. 308 [5 Pac. (2d) 585], and by the United States District Court for the Northern District of California in *Garland Co.*

v. *Filmer et al.*, 1 Fed. Supp. 8. The District thereupon advertised for bids for $6,000,000 of the bonds, to bear interest at the rate of 4¾ per cent per annum, payable semi-annually. That amount of bonds was sold at a price of 92.30 per cent of their face value, together with accrued interest—a price conceded to represent their market value at the time of sale, but which will yield to the purchasers of the bonds 5¼ per cent interest.

Section 15 of the Bridge and Highway District Act (Stats. 1923, p. 452; as amended, Stats. 1925, p. 714; 1927, p. 574; 1931, p. 239; Deering's Gen. Laws [1931], Act 936), hereinafter referred to as the Bridge Act, provides that before incurring any bonded indebtedness the board of directors of a district shall, by resolution, state the proposition to be submitted to the electors, which statement, among other matters, must show the purpose for which the proposed debt is to be incurred, the maximum term the bonds proposed to be issued shall run, and the maximum rate of interest to be paid, which interest shall not exceed 6 per cent per annum. Pursuant to this provision, the board of directors of the District submitted to the electors a proposition for a bonded indebtedness amounting to $35,000,000, maturing in not more than forty years from the date of the bonds, and *bearing interest not exceeding 5 per cent per anumn.* The respondents, as president and secretary of the board of directors, refused to execute and deliver the bonds, upon the ground that, at the price for which they were sold, the rate of yield to the purchasers—according to the bond tables approximately 5¼ per cent—exceeds the rate of interest, 5 per cent, mentioned in the proposition submitted to the electors of the District.

The contention of the respondents is that the interest provisions of the statute and of the proposition submitted to the electors refer solely to the rate of interest yielded to the purchasers of the bonds; that therefore the sale was illegally made at a rate in excess of the 5 per cent referred to in the proposition, and amounts to an invasion of a contractual relation resulting from the submission to, and the approval by, the electors of the District of the proposition submitted to them. The position of the petitioner, on the other hand, is that the rate of interest contemplated by the Bridge Act, and specified in the bond proposition, relates to and

is a rate of interest based on the principal amount of the bond, that is, the coupon rate.

It should be noted, as we begin our discussion, that there is no express provision in the Bridge Act that the District may not sell its bonds at a price below their par value. The board of directors may sell or dispose of the bonds at such times or in such manner as it may deem to be to the public interest. Notwithstanding the absence of any restriction regarding the sale price, the respondents contend that the price at which the bonds may be legally sold must not be so far below par as to necessitate the payment of interest to the purchasers in excess of 5 per cent, computed on the amount of money the District receives for its bonds. In support of their position respondents rely upon the principle firmly established that, by reason of a proposal on the part of the officers of a municipality or district and the approval of the electors therein as to the authorization and issuance of a bond issue, a status analogous to a contractual relation comes into being, which is entitled to protection under the Constitution. This proposition may not be denied. The case of *Peery* v. *City of Los Angeles*, 187 Cal. 753 [203 Pac. 992, 19 A. L. R. 1044], is authority to that effect. It may, however, be distinguished from the case at bar without departing from the rule it lays down. It involved an effort on the part of the city of Los Angeles to dispose of an unsold portion of a bond issue for less than the par value of the bonds. The law in force at the time, and under which the bonds were voted, contained an inhibition against that being done. As all the bonds could not be sold at par, the law was changed by an act permitting the bonds remaining unsold to be disposed of at less than par, and for a price which would net the purchasers a rate of interest greater than the rate permitted by the act under which they were authorized. Here, as above stated, there is no express provision in the act that the District may not sell its bonds at a price below their par value. There, the rate of interest on the bonds was not in question. Our present consideration narrows to a determination of the question as to what was intended by the provision in section 15 of the act which declares that "the maximum rate of interest to be paid [on bonds] shall not exceed six percentum per annum", and the provision in the proposition submitted to

the electors describing the bonds as "bearing interest not exceeding 5 per cent per annum".

Another decision of this court cited by respondents is *O'Farrell* v. *Sonoma County,* 189 Cal. 343 [208 Pac. 117]. The board of supervisors called an election for the purpose of voting bonds for the construction of a road of a definite length, and stating the amount to be expended. Subsequently the board attempted to enter into a contract for the construction of only a part of the road specified. This court held that the order calling the election, and the ratification of that order by the electors, constituted a contract between the state and the individuals whose property was thereby affected—a contract which could not be altered except by all the parties thereto. The statement of facts in the case serves to distinguish it from the present situation.

We deem it unnecessary to discuss at length or refer to the many decisions cited by the respondents on this phase of the question. They have been thoroughly discussed and distinguished by counsel on the respective sides. They are distinguishable in large measure by peculiar facts and the language of statutes under consideration. ■ While some of them do support the respondents' position, we are of the view that the contention of the petitioner is fundamentally sound in theory, is supported by the general weight of authority, and has the approval of procedure and practice generally accepted in this state under statutes containing provisions similar to those of the Bridge Act. The practice has borne the test of practical construction which has been long given by the officers of the state charged with the supervision and control of the issuance of such bonds, and is approved by the action of the legislature, which has left, in many instances, the sale and disposition of them to the business judgment and good faith of local officers, to be controlled by financial conditions. ■ The nature of municipal and district bonds and securities issued for definite purposes, the procedure under which they are issued, and the burdens placed upon the issuing communities are definitely understood. They are recognized as a commodity on the market, and pass from hand to hand on delivery, being commonly treated as a species of tangible property in themselves. (*Westinghouse Electric & Mfg. Co.* v. *County of Los Angeles,* 188 Cal. 491, 494 [205 Pac. 1076].)

Petitioner, in its brief, has set forth at considerable length the distinction between the rate of yield to a purchaser of bonds and the coupon rate, and has also quoted at length from decisions and from works bearing on various questions relating to the sale of bonds. This discussion involves mathematical calculations, and sets out examples of computations commonly made in ascertaining for a buyer, by resort to bond tables and other sources of information ordinarily used, the rate of yield that will be obtained upon the purchase of bonds at given prices and according to the coupon rate. ▮ It seems to be definitely settled in the financial world that the three essential characteristics of such bonds are principal amount, coupon rate and maturity. The Supreme Court of the United States in *Old Colony R. Co.* v. *Commissioner of Internal Revenue*, 284 U. S. 552 [52 Sup. Ct. 211, 76 L. Ed. 484], took the view, in regard to a contention as to the meaning of "interest", that it could not believe that Congress, in using the word in the act, had in mind any concept other than the usual, ordinary and every-day meaning of the term, or that it was acquainted with the accountants' phrase "effective date" of interest, but no doubt used it in the common understanding that interest means what is usually called interest by those who pay and who receive the amount so denominated in bond and coupon.

It seems to us that since the language in the Bridge Act and in the proposition submitted to the electors clearly refers to one of the essential characteristics of bonds, to wit, the coupon rate, there can be no justification for disregarding the natural meaning of the language used and its evident purpose, and that it must be held that the language of the act and of the proposition refers directly to the description and form of the bonds to be issued.

In addition to failing to provide that the board of directors may not sell the bonds at less than par, the Bridge Act provides that, if the vote of the District is "favorable to the incurring of such indebtedness, then the board of directors may by resolution at such time or times as it deems proper provide for the form and execution of such bonds, and for the issuance of any part thereof, and may

sell or dispose of the bonds so issued at such times or in such manner either for cash in lawful money of the United States, or its equivalent as it may deem to be to the public interest . . . ' ' We are of the view that the general rule, as established by the authorities, applies to this case, and is that so well stated by the Supreme Court of Kansas in *Rowland* v. *Deck,* 109 Kan. 440 [195 Pac. 868]. There, a taxpayer sought to enjoin the issuance of county bonds bearing coupons at the rate of 5 per cent per annum (the maximum rate of interest permitted by the enabling act), which had been sold at a discount from par. The court discussed many decisions from its own and from other jurisdictions, some of which are relied on by the respondents here, and said: ''Where it is desired by the lawmaking body to restrict the amount for which bonds may be sold, the custom in this state and elsewhere is general to insert a clause in the statute to the effect that par or better must be obtained for them; this practice is so common that the omission of that or some other provision expressly covering the subject creates a strong presumption that the legislature was content to rely upon the good faith and business judgment of the local officials to see that the bonds brought substantially the market price, which would necessarily be controlled by financial conditions.'' ■ As a conclusion, the court held that where a statute authorizes the issuance of bonds bearing not more than a stated rate of interest, and provides for their sale without making an express requirement as to the amount they shall bring, bonds issued thereunder, which bear the maximum interest named, may be sold at a discount, if the sale is made on the best terms obtainable. In exact accord with this view is the decision of the Court of Appeals of Maryland in *Stanley* v. *Mayor of Baltimore,* 146 Md. 277 [126 Atl. 151, 130 Atl. 181]. The Supreme Court of Oregon has said: ''The weight of authority is to the effect that the sale of municipal bonds below par is not illegal, unless the act or ordinance authorizing the issue expressly directs that they shall not be sold for less than par.

'' 'That the bonds of a municipal corporation may be sold by it for less than par must be regarded as the general

understanding of lawmakers of the states, as well as the officers of the municipalities, because, when it is desired to prevent such sale, that fact is incorporated in the enabling act or in the ordinance or resolution providing for the issue of the bonds.' Simonton, Municipal Bonds, sec. 146.'' (*Kiernan* v. *Portland,* 61 Or. 398 [122 Pac. 764, Ann. Cas. 1914B, 255].)

We may take it as conceded that the bonds of the Golden Gate Bridge and Highway District were sold on the best terms obtainable; and, other than the legal question raised, it is not suggested that there has been any act of the directors of the District tending in any way to violate the terms of their contract with the electors of the District. The good faith of the Directors of the Bridge District is in no way challenged.

We have been presented by the petitioner with a comparative analysis of the legislation in California relating to the issuance of bonds by public corporations, together with the practical construction given to many of these statutes by the officers of the state, the public, the legal profession, and the courts, over a long course of years. The fifty-three acts so analyzed may be divided into three classes: (a) Statutes providing for the issuance of bonds by public corporations which designate or limit the interest rate of bonds, and also designate or limit the sale price of bonds; (b) statutes providing for the issuance of bonds by public corporations which, like the Bridge Act, contain limitations as to interest rate and provisions for the sale of bonds, but no requirement as to the selling price; (c) statutes providing for the issuance of bonds in which the coupon rate is designated, and in which the sale price is limited to a price which will net the purchaser not more than a specified rate of yield according to the standard table of bond values. Conceding to the legislature the familiarity it must have had with its own enactments and with the general rule prevailing in other jurisdictions, we cannot escape the conclusion that, had the lawmakers, when they enacted the Bridge and Highway District Act (*supra*), intended that the bonds of such District should not be sold at less than par, they would have so provided in the act. ''It seems more reasonable to infer

[again quoting from the Supreme Court of Oregon in *Kiernan* v. *Portland*], from the language here employed that it was the intent of the lawmaking power to grant to the [directors] the entire discretion to sell at the best advantage possible under the circumstances."

Respondents have called our attention to and argue from a statement contained in our former opinion, *Golden Gate Bridge etc. Dist.* v. *Felt, supra,* wherein it was said: "They [the voters] certainly knew that a costly project was to be built and financed by bonds *selling at par with a low rate of interest.*" (Italics added.) We must confess to the inadvertent use of language not at all pertinent to the question then before us. It does not need this explanation to establish that fact, for a reading of the decision at once indicates that the words used were entirely aside the mark, and could have no relevancy and binding effect in the opinion. ■ Our conclusion is that the terms, "rate of interest" in the Bridge Act, and "bearing interest not exceeding 5%" in the proposition submitted to the electors, must be held to refer to the coupon rate of the bonds to be issued.

For the foregoing reasons, the respondents should execute and deliver the bonds of the District as prayed for. Let the necessary writ issue.

Curtis, J., Shenk, J., Seawell, J., and Thompson, J., concurred.

Langdon, J., deeming himself disqualified, did not participate herein.