220 P.2d 704

**STONE v. CITY OF HOBBS et al.**

**No. 5284.**

Supreme Court of New Mexico.

July 5, 1950.

& Company, of Denver, Colorado, entered into pursuant to the act.

The City of Hobbs, by authority of Sec. 14-3901, N.M.Stats.1941 Comp., is collecting a tax of one cent per gallon upon all gasoline and motor fuel sold within the city. Pursuant to Chapter 122, Laws 1947, N.M. Stats., it has issued its provisional order directing the improvement of certain streets within the city, and by ordinance, has created a Special Street Improvement Fund and directed that the sum of $28,000 annually as collected from the municipal gas tax, be placed in and credited thereto. By ordinance, the city has authorized and directed its Mayor and City Clerk to enter into an agreement with the said Boettcher & Company for the sale of certain paving securities nòt exceeding $600,000 to be issued by the city in connection with street improvements to be made within the improvement district. Pursuant thereto, the parties have entered into a contract whereby Boettcher & Company agrees to purchase the special assessment negotiable coupon bonds in the aggregate of $600,000, bearing 5½% interest and at a discount of 4%. To implement the sale the city irrevocably pledges of the fund so collected the sum of $25,000 annually for a period of 10 years to the payment of defaulting interest on such securities and for the repurchase by the city of such securities in inverse numerical order.

Easley & Quinn, Hobbs, for appellant.

Neal & Girand, Hobbs, Williams & Johnson, Hobbs, for appellees.

Waldo H. Rogers, Albuquerque, amicus curiae.

COMPTON, Justice.

The basic questions are (a) the constitutionality of Chapter 122, Laws of 1947, N.M. Stats., and (b) the validity of a contract between the City of Hobbs and Boettcher

Appellant is engaged in a wholesale gasoline business in the City of Hobbs, supplying gasoline and motor fuel to numerous retail gasoline dealers operating therein. He owns and operates numerous motor vehicles within the city and by force of the ordinance is required to pay and does pay the gasoline tax so used in his vehicles. He is also the owner of other property located within and without the district sought to be improved and has instituted this action for a declaratory judgment to determine the constitutionality of Chapter 122, the validity of the contract, particularly, the pledging of the improvement fund to the payment of interest and the repurchase of defaulting securities, and the sale of its bonds below par.

Analyzing the act, we notice its pertinent provisions: (a) Municipalities collecting license tax on gasoline and motor fuel may by ordinance create and maintain a Special Street Improvement Fund for use in financing street improvement projects therein; (b) it may anticipate the annual proceeds of the fund, and contract for the annual repurchase of certificates or bonds over a period not to exceed 10 years, and not to exceed an annual expenditure of 90% of the anticipated funds, and for the replenishment of such fund by sale of defaulting certificates or bonds; (c) procedural steps; (d) it may irrevocably pledge the fund for a period not to exceed 10 years for the payment of principal and interest on assessment certificates or coupon bonds wherein default may occur, and may pledge the proceeds of the funds solely for special street improvements and for no other purpose; (e) that the obligation created shall not be considered or held to be the general obligation of the municipality and that contracting parties may look to no other funds for its discharge; (f) that the municipality shall be subrogated to the rights and remedies of the holder of the securities upon which default is made; (g) that the fund shall not be diverted to other municipal purposes except upon written approval of the State Comptroller.

 Whether an excise tax may be pledged for the payment of special assessment paving bonds has been fully answered. In Calerdine v. Freiberg, 129 Ohio St. 453, 195 N.E. 854, 858, the court held that a statute authorizing the use of annual motor vehicle tax for other than highway purposes is not violative of the due process or the equal protection clause of the Federal Constitution nor is it violative of the constitutional provision prohibiting special privileges or immunities or the taking of private property without compensation. We quote with approval.

"However, the question of the power of the Legislature as to the application of excises is one that is not open to conjecture in this state. In the first paragraph of the unreversed syllabus in the case of State ex rel.

Schwartz, Pros. Atty., v. Ferris, 53 Ohio St. 314, 41 N.E. 579, 30 L.R.A. 218, this court very definitely stated the well settled rule as follows: 'Funds raised by the taxation of franchises, rights, and privileges may be applied to purposes of general revenue, or any other purpose authorized by statute.'

\* \* \* \* \* \*

" 'But we are now concerned only with the use of motor cars in intrastate commerce, and in any case, not the precise name which may be given to the money payment demanded, but its effect upon the persons paying it, is of importance in determining whether the Constitution is infringed. Whatever other descriptive term may be applied to the present registration fees, they are exactions, made in the exercise of state taxing power, for the privilege of operating specified classes of motor vehicles over public highways, and expended for state purposes. Such fees, if covered into the state treasury and used for public purposes, as are general taxes, obviously would not offend against the due process clause. Nor can we see that they do so the more because the state has designated the particular public purposes for which they may be used. There is nothing in the Federal Constitution which requires a state to apply such fees for the benefit of those who pay them. See Thomas v. Gay, 169 U.S. 264, 280, 18 S.Ct. 340, 42 L.Ed. 740.' "

Other constitutional questions are settled by State ex rel. Capitol Bldg. Commission v. Connelly, 39 N.M. 312, 46 P.2d 1097, 100 A.L.R. 878. There, Mr. Justice Sadler, speaking for the court, held that the term "debt" within the constitutional provision limiting the debt contracting power of the state and municipalities, refers to an obligation by which the general faith and credit of the state or municipality is pledged, and which contemplates the levy of a general property tax for its retirement. Manifestly the obligation is not a debt within the meaning of the constitutional provision. Also see State Office Bldg. Commission v. Trujillo, 46 N.M. 29, 120 P.2d 434.

Ordinarily, as contended by appellant, the legislature cannot limit its authority subsequently to alter, amend or repeal existing statutes. We think the rule is well settled. Blue v. State ex rel. Brown, 206 Ind. 98, 188 N.E. 583, 91 A.L.R. 334. But there is an exception where vested rights are granted. City of Philipsburg v. Porter, Mont., 190 P.2d 676; State ex rel. Boynton, Atty. Gen., v. Kansas State Highway Commission, 139 Kan. 391, 32 P.2d 493.

Appellant contends that the act infringes against the power and authority of the State Comptroller to transfer public funds. As we view the act, it merely prevents the withdrawal or transfer of funds

until the obligation for which the fund is created has been discharged. 7-120, N.M. Stats.1941 Annotated. We fail to see the claimed infringement. Cf. Streit v. Lujan, 35 N.M. 672, 6 P.2d 205.

■ In the absence of a statute to the contrary a municipality may sell its bonds below par. Golden Gate Bridge and Highway Dist. v. Filmer, 217 Cal. 754, 21 P.2d 112, 91 A.L.R. 1. In some jurisdictions, the limitation of interest prohibits the sale of bonds at a discount if it has the effect of increasing the interest rate above the authorized maximum. Wallace v. Ball, 205 Ala. 623, 88 So. 442; Hattrem-Nelson & Co., Inc., v. Salmon River-Grande Ronde Highway Improvement Dist., 132 Or. 297, 285 P. 231; Sanders v. City of Troy, 211 Ala. 331, 100 So. 483; Langdon v. City of Walla Walla, 112 Wash. 446, 193 P. 1; Cf. Jacobson v. Middle Rio Grande Conservancy Dist., 36 N.M. 357, 15 P.2d 674. While other courts hold that the rate of interest expressed in the bond is a limitation of interest only and is not a restriction upon the price for which the bonds may be sold. Golden Gate Bridge and Highway Dist. v. Filmer, supra; Rowland v. Deck, 108 Kan. 440, 195 P. 868, 870. In the latter case the court said:

"We accept the view that the provisions of the road statute as to the rate of interest the bonds shall bear has reference to the terms in which they shall be drawn, and is not intended as a restriction upon the price for which they shall be sold. The established doctrine that bonds may be sold at a discount unless such course is forbidden recognizes the obvious distinction between the rate of interest provided in the bond itself and what the municipality issuing it actually pays for the use of the money it borrows by means thereof. * * *

" 'That the bonds of a municipal corporation may be sold by it for less than par must be regarded as the general understanding of lawmakers of the states, as well as the officers of the municipalities, because, when it is desired to prevent such sale, that fact is incorporated in the enabling act or in the ordinance or resolution providing for the issue of the bonds.' "

■ Other courts hold, and we think properly, that the prohibition against the sale of bonds below par has reference only to bonds which constitute a "debt" by which the general faith and credit of the state or municipality is pledged. State ex rel. Bldg. Commission v. Connelly, supra; Fjeldsted v. Ogden City, 83 Utah 278, 28 P.2d 144; City of Beggs v. Kelly, 110 Okl. 274, 238 P. 466; City of Bainbridge v. Jester, 157 Ga. 505, 121 S.E. 798, 33 A.L.R. 1406. Moreover we sense a legislative intent that municipalities be permitted to sell bonds below par where the general faith and credit of the municipality is not pledged as Sec. 14-3618, N.M.Stats.1941 Comp., expressly prohibits

the sale of general obligation bonds below par and accrued interest, while Sec. 14-3703, N.M.Stats.1941 Comp., respecting the sale of special improvement bonds, contains no such inhibition. It is reasonable to presume that the legislature was mindful of the former provision when it enacted the latter.

■ Appellee assigns error the ruling of the court that the discount of special improvement bonds is not properly assessable against the property located within the improvement district. This position is untenable. Many courts hold that commissions paid to brokers or agents in connection with the sale of such bonds are an expense properly chargeable to the cost of the improvement. Bayha v. Public Utility Dist. No. 1 of Grays Harbor County, 2 Wash.2d 85, 97. P.2d 614; Rowland v. Deck, supra; Le Roy v. Elizabeth City, 166 N.C. 93, 81 S.E. 1072. In its brief and at the oral argument, appellee asserted that Boettcher & Company, while parties to the contract, were also acting as agents or brokers for other purchasers. If this be true, it is obvious that the city will be economically and tangently benefited by a sale of its bonds directly to Boettcher & Company. It will, to say the least, escape the possibility of the expense of readvertising, engineering and attorney fees. Logically, the discount is an incidental expense necessary to the construction and is properly assessable against the property located in the improvement district.

We conclude that the questioned act is not constitutionally objectionable:

(a) As lending credit in aid of private persons in violation of Sec. 14, Article 9, of the Constitution of New Mexico;

(b) As creating an indebtedness within the meaning of Sec. 12, Article 9, of the Constitution of New Mexico;

(c) As constituting a debt within the meaning of Sec. 13, Article 9, of the Constitution of New Mexico;

(d) As the taking of private property for public use without just compensation within the meaning of Sec. 20, Article 2, of the Constitution of New Mexico;

(e) As a use of public funds for private purposes within the meaning of the Constitutional provision prohibiting the use of public funds for other than public purposes;

(f) As creating a debt within the meaning of Sec. 29, Article 4, of the Constitution of New Mexico;

(g) As taking property without due process of law or denial of equal protection of law, within the meaning of Sec. 18, Article 2, of the Constitution of New Mexico or the 14th Amendment to the Federal Constitution.

We further conclude:

(a) That the act does not infringe against the powers of the State Comptroller;

(b) That the act does not conflict with legislative power to repeal or amend;

(c) That the sale of 5½% bonds at a discount of 4% does not violate the provision prohibiting the issuance of special negotiable coupon bonds with interest rate in excess of 7%;

(d) That the 4% discount is properly chargeable to the improvement district as an incidental expense of the improvements.

The judgment of the court will be affirmed in part and in part, reversed; it will be reversed in so far as it holds that the discount is not an incidental expense necessary to the construction and not properly assessable against the property located within the improvement district. And it is so ordered.

BRICE, C. J., and LUJAN, SADLER and McGHEE, JJ., concur.