[Civ. No. 62070. Second Dist., Div. One. Nov. 16, 1981.]

ALLIS-CHALMERS CORPORATION, Plaintiff and Appellant, v. CITY OF OXNARD et al., Defendants and Respondents.

**COUNSEL**

Hill, Wynne, Troop & Meisinger, Louis M. Meisinger and Neil R. O'Hanlon for Plaintiff and Appellant.

Mark G. Sellers for Defendants and Respondents.

**OPINION**

**LILLIE, Acting P. J.**—Plaintiff appeals from summary judgment entered in favor of defendant City of Oxnard[1] in plaintiff's action for declaratory relief and to enjoin the issuance of bonds for unpaid assessments for municipal improvements.

The complaint's first cause of action, for declaratory relief, alleged: On October 24, 1978, the city council adopted resolution of intention No. 7487 declaring its intention to order the construction of certain works of improvement pursuant to the Municipal Improvement Act of 1913 (Sts. & Hy. Code, § 10000 et seq.), describing the district to be

---

[1]As referred to herein the City of Oxnard includes the members of its city council, who also were named as defendants and joined in the motion for summary judgment.

benefited by said improvements and to be assessed to pay the costs thereof, and determining and declaring that bonds would be issued for unpaid assessments. Plaintiff is the owner of real property within the assessment district. On December 5, 1978, the city council adopted resolution No. 7529 confirming the assessment, ordering the improvements and approving the engineer's report for the assessment district. On December 6, an assessment in the amount of $40,687 became due and payable by plaintiff. On December 7, 1978, the city sent a written statement of assessment to plaintiff providing in part: Payment of the assessment could be made on or before January 8, 1979; if the assessment were not paid bonds would be issued to represent each assessment of $50 or more remaining unpaid; the bonds would bear interest at the rate of 6 percent per annum. Plaintiff did not pay the assessment of $40,687. On September 9, 1980, a hearing took place before the city council concerning the proposed adoption of resolution No. 7974 accepting a proposal for sale of the bonds on the following terms: the bonds would bear interest at the rate of 8 percent per annum and would have an original issue discount of 5 percent of their face value, so that the purchaser would pay the city only 95 percent of the face value of the bonds. Plaintiff appeared at the hearing of September 9, 1980, and orally protested issuance of the bonds on terms different from those set forth in the statement of assessment. Despite said protest the city council adopted its resolution No. 7974. An actual controversy exists between plaintiff and the city in that plaintiff contends and the city denies, that: (1) issuance of the bonds at a discount of 5 percent of their face value would result in an effective annual rate of interest in excess of 8 percent in violation of Streets and Highways Code section 10602, which provides for maximum interest of 8 percent per annum on municipal improvement bonds; and (2) inasmuch as the statement of assessment sent to plaintiff specified an interest rate of 6 percent of the bonds, issuance of bonds at an interest rate of 8 percent would violate Streets and Highways Code section 10404, subdivision (b)(4), which requires that the statement of assessment sent to affected property owners indicate the effect of failure to pay the assessment within the specified period. The second cause of action (injunctive relief) repeated most of the allegations of the first cause of action and further alleged that the city, unless enjoined, intends to issue bonds immediately pursuant to resolution No. 7974, in violation of Streets and Highways Code sections 10602 and 10404.

Concurrently with the filing of its answer the city moved for summary judgment; plaintiff opposed the motion. Findings of fact and con-

clusions of law were signed and filed.[2] Judgment was entered denying injunctive relief and declaring: (1) the issuance of and contract for sale of the city's improvement bonds is in compliance with Streets and Highways Code section 10602, which does not prohibit the sale of bonds at a discount to the purchaser even though such discount would yield interest in an amount greater than the maximum interest rate of 8 percent per annum set forth in the statute; and (2) the statements of assessment given by the city to plaintiff were in substantial compliance with law and did not invalidate the improvement bond issue proceedings.[3]

The declarations submitted in support of and in opposition to the motion for summary judgment show that there is no triable issue of fact. The only issues presented to the trial court were issues of law, which may be determined in summary judgment proceedings. (*Dow* v. *Britt* (1974) 37 Cal.App.3d 868, 871 [112 Cal.Rptr. 710]; *Rader* v. *Thrasher* (1972) 22 Cal.App.3d 883, 887 [29 Cal.Rptr. 670]; *Burke Concrete Accessories, Inc.* v. *Superior Court* (1970) 8 Cal.App.3d 773, 775 [87 Cal.Rptr. 619].) We turn to those issues.

## I

Streets and Highways Code section 10602 provides in pertinent part: "The bonds may be issued and sold as the legislative body directs.... The notice in the resolution of intention shall recite a maximum rate of interest to be paid on the indebtedness, not to exceed 8 percent a year payable semiannually, which rate shall not be exceeded in the issuance of the bonds." The question is whether this provision limits the interest rate appearing on the face of the bonds, or whether it limits the effective interest rate realized by reason of a sale of the bonds for less than their face value.

---

[2]The court is without power to make findings of fact and conclusions of law in a summary judgment proceeding. (*Dixon* v. *Ford Motor Co.* (1975) 53 Cal.App.3d 499, 508 [125 Cal.Rptr. 872]; *Perry* v. *Farley Bros. Moving & Storage, Inc.* (1970) 6 Cal.App.3d 884, 889 [86 Cal.Rptr. 397]; *Meyer Koulish Co.* v. *Cannon* (1963) 213 Cal.App.2d 419, 432 [28 Cal.Rptr. 757].) Accordingly, we ignore the findings and conclusions.

[3]The summary judgment procedure is appropriate in declaratory relief actions. (*Exchequer Acceptance Corp.* v. *Alexander* (1969) 271 Cal.App.2d 1, 11-12 [76 Cal.Rptr. 328]) and the judgment in the instant case comports with the requirement that in a declaratory relief action the court should decree that plaintiff is not entitled to a declaration in his favor rather than enter a judgment of dismissal. (*Essick* v. *City of Los Angeles* (1950) 34 Cal.2d 614, 624 [213 P.2d 492]; *Spencer* v. *Hibernia Bank* (1960) 186 Cal.App.2d 702, 712 [9 Cal.Rptr. 867].)

In *Golden Gate Bridge etc. Dist.* v. *Filmer* (1933) 217 Cal. 754 [21 P.2d 112, 91 A.L.R. 1], the Supreme Court was faced with a similar question. An uncodified statute (the Bridge and Highway District Act) provided that "the maximum rate of interest to be paid [on bonds] shall not exceed six percentum per annum." Pursuant to the statute the voters approved a proposition for a bonded indebtedness "bearing interest not exceeding 5 per cent per annum." The district then advertised for bids on bonds bearing interest of 4 3/4 percent per annum and sold the bonds for less than their face value, thereby yielding to the purchasers 5 1/4 percent interest. The Supreme Court rejected the contention that the interest provisions of the statute and the proposition approved by the voters referred solely to the rate of interest yielded to the purchasers of the bonds, and concluded that the terms "rate of interest" in the statute and "bearing interest not exceeding 5%" in the proposition referred to the coupon rate of the bonds to be issued. (217 Cal. at p. 762.) In reaching this conclusion the court noted that the statute did not expressly prohibit sale of the bonds at a price below their par value, and went on to state: "[T]he three essential characteristics of such bonds are principal amount, coupon rate and maturity. . . . [¶] It seems to us that since the language in the [statute] and in the proposition submitted to the electors clearly refers to one of the essential characteristics of bonds, to wit, the coupon rate, there can be justification for disregarding the natural meaning of the language used and its evident purpose, and that it must be held that the language of the act and the proposition refers directly to the description and form of the bonds to be issued." (217 Cal. at p. 759.)

The Legislature is presumed to have knowledge of existing judicial decisions and to have enacted statutes in the light thereof. (*Estate of McDill* (1975) 14 Cal.3d 831, 839 [122 Cal.Rptr. 754, 537 P.2d 874]; *Favalora* v. *County of Humboldt* (1976) 55 Cal.App.3d 969, 973 [127 Cal.Rptr. 907].) "Where words used in a new statute have been construed as having been used in a particular sense in a former statute on the same or an analogous subject, they are presumed to have been used in the same sense in the new statute unless there is a clearly expressed intention to the contrary." (*Estate of Hoegler* (1978) 82 Cal.App.3d 483, 489 [147 Cal.Rptr. 289].) Thus, it must be presumed that the Legislature, in adopting Streets and Highways Code section 10602 (enacted in its present form in 1953), intended the phrase "maximum rate of interest" therein to mean the rate of interest appearing on the face of the bonds (coupon rate) rather than the rate of interest realized by the purchaser because of sale of the bonds at less

than their par value. Plaintiff argues that such definition may not be applied to section 10602 because that statute, unlike the one under consideration in the *Golden Gate Bridge* case, does not merely prescribe a maximum rate of interest, but further provides "which rate shall not be exceeded in the issuance of the bonds." In so arguing, plaintiff apparently attempts to draw a distinction between the issuance of bonds and their sale. A similar argument was rejected in *Moreing* v. *Shields* (1915) 28 Cal.App. 513 [152 P. 964], wherein the court stated (pp. 516-517): "It is the contention of respondents that bonds have been *issued* herein for the reason that they have been executed and placed in the hand of the treasurer. We are satisfied that this is a mistaken view of the significance of the term. It cannot be said that bonds have been *issued* until they have been sold and placed in the hands of third parties, so as to create an obligation against the district." (Italics emphasis.)

Plaintiff further argues that the intention of the Legislature to prohibit the issuance of bonds yielding a net interest rate in excess of 8 percent is shown by the Legislative Counsel's Digest accompanying a bill to amend section 10602, which bill was enacted into law. (Stats. 1975, ch. 130, § 49, p. 226.) Explanatory comments by a law review commission are persuasive evidence of the intent of the Legislature in adopting the statute proposed by the commission (*Brian W.* v. *Superior Court* (1978) 20 Cal.3d 618, 623 [143 Cal.Rptr. 717, 574 P.2d 788]); the same is true of committee reports on a bill subsequently enacted into law. (*In re Vicki H.* (1979) 99 Cal.App.3d 484, 495 [160 Cal.Rptr. 294].) Plaintiff cites no authority, and we have discovered none giving a like effect to a Legislative Counsel's Digest of a bill. In any event, the Legislative Counsel's Digest relied on by plaintiff does not support plaintiff's argument. That digest states: "Existing statutory law permits the maximum interest rate for bonds authorized by the legislative body of a local agency ... to be 8% per year and permits such bonds to be sold at a discount at a price yielding to the purchaser an effective interest rate not to exceed 8% per year.... [¶] This bill would amend various sections of various codes to conform to the existing law." The effect of the bill (which amended a total of 87 code sections) was to limit to 8 percent the effective rate of interest under statutes which expressly permit the sale of bonds at a discount. The bill did not limit the effective interest rate on bonds sold at a discount under section 10602, which is silent as to such sales and provides instead that the bonds "may be issued and sold as the legislative body directs." Section 10602 was amended only by increasing the maximum interest rate specified therein

from 7 percent to 8 percent (Stats. 1975, ch. 130, § 49, p. 226). Such interest rate refers to that appearing on the face of bonds issued pursuant to section 10602, not to the net interest rate yielded by sale of the bonds at a discount. (See *Golden Gate Bridge etc. Dist.* v. *Filmer, supra*, 217 Cal. 754.)

There are statutes which expressly limit the net rate of interest on bonds. (See, e.g. Gov. Code, §§ 43655, 43727.)[4] Inasmuch as section 10602 contains no similar provision, it must be presumed that the Legislature did not intend such limitation to apply in the issuance of bonds under that statute. █ "'Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed.'" (*Richfield Oil Corp.* v. *Crawford* (1952) 39 Cal.2d 729, 735 [249 P.2d 600]; see also *Estate of Trego* (1978) 81 Cal.App.3d 530, 534 [146 Cal.Rptr. 664]; *Hennigan* v. *United Pacific Ins. Co.* (1975) 53 Cal.App.3d 1, 8 [125 Cal.Rptr. 408].)

II

█ Streets and Highways Code section 10404 provides in part: "(b) Upon recording of the assessment, the collection officer shall mail, as provided in subdivision (a) of Section 5070, a statement containing all of the following: ... [¶] (4) The time and place of payment of the assessment and the effect of failure to pay within such time. [¶] (5) If bonds are to be issued, a statement of that fact designating the act pursuant to which such bonds are to be issued."

The complaint alleged that "[i]ssuance of the bonds would violate Streets and Highways Code § 10404(b)(4)" because the statement of assessment sent to plaintiff on December 7, 1978, did not indicate the effect of failure timely to pay the assessment in that the statement provided that the bonds would bear an interest rate of 6 percent per annum, whereas the city now proposes to issue bonds at an interest rate

---

[4]Government Code section 43655: "The bonds shall be sold as the legislative body shall determine but for not less than a price which will produce a net interest cost that will not exceed an average of 8 percent a year as determined by standard tables of bond values."

Government Code section 43727: "The bonds may be sold in the manner provided by the legislative body, to the highest bidder, at such price that the interest rate paid by the city, computed on the sale price, will not exceed 8 percent a year ...."

of 8 percent.[5] The basic premise of this allegation is false, for the validity of the issuance of bonds does not depend upon the city's compliance with section 10404. Thus, Streets and Highways Code section 10012 provides: "This division [the Municipal Improvement Act of 1913] shall be liberally construed in order to effectuate its purposes. No error, irregularity, informality, and no neglect or omission of any officer, in any procedure taken under this division, which does not directly affect the jurisdiction of the legislative body to order the work or improvement, shall avoid or invalidate such proceedings or any assessment for the cost of work done thereunder. . . ." Section 10404, subdivision (c) states: "The failure of the collection officer to mail the notice to any property owner or the failure of any property owner to receive the notice shall not affect the validity of any proceedings taken under this division." Inasmuch as failure to send a statement of assessment does not affect the validity of municipal improvement bond proceedings, a fortiori any defect in a statement of assessment which was sent does not invalidate such proceedings.

In view of this conclusion, it is unnecessary to discuss either the alleged defect in the statement of assessment sent to plaintiff on December 7, 1978, or defects which plaintiff contends were present in a second statement of assessment sent to it in September 1980.

The judgment is affirmed.

Hanson (Thaxton), J., and Dalsimer, J., concurred.

---

[5]The statement of assessment (attached to the complaint as an exhibit) provided in part: "In the event of failure to pay [the assessment on or before Jan. 8, 1979], serial bonds shall be issued in accordance with Division 7 of the Streets and Highways Code of the State of California ('Improvement Act of 1911') to represent each assessment of Fifty Dollars ($50.00) or more remaining unpaid for thirty (30) days after the date of the recording as stated above."

This provision complies with subdivision (b)(5) of section 10404 which requires that a statement of assessment include only the designation of the act pursuant to which bonds are to be issued, not a description of the bonds.